## UNITED STATES v. TUTHILL SPRING CO.

## TUTHILL SPRING CO. v. REINECKE, Collector of Internal Revenue.

### Nos. 36393, 35708.

District Court, N. D. Illinois, E. D.
Dec. 21, 1931.

George E. Q. Johnson, U. S. Dist. Atty., of Chicago, Ill., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and Dwight H. Green and John P. Barnes, Asst. U. S. Attys., both of Chicago, Ill., and Frank J. Ready, Jr., of Washington, D. C., Sp. Atty., Bureau of Internal Revenue, for the United States and Mabel G. Reinecke, Collector.

Carl H. Weyl (of Elliott, Weyl & Jewett) and John Rabb Emison, both of Indianapolis, Ind., for Tuthill Spring Co.

WOODWARD, District Judge.

These two cases involve the application of the same principles of law. Hence, a single opinion will dispose of both cases.

The Tuthill Spring Company from March 25, 1919, to and including June 22, 1922, was engaged in the manufacture of leaf springs for replacement parts of automobiles. The Tuthill Spring Company designed and manufactured some 800-odd different sizes of types of springs called Titanic springs and designated each particular size of type of spring in its catalog by a particular stock number. Each spring so designated by a stock number was designed, manufactured, advertised, and sold by the Tuthill Spring Company as a replacement spring upon some particular make and model of automobile or motortruck.

From February, 1919, to and including June, 1922, the Tuthill Spring Company reported and paid to the collector of internal revenue an excise tax upon the sale of leaf springs pursuant to the provisions of section 900 (3) of the Revenue Acts of 1918 and 1921, which reads as follows:

"That there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold or leased—

"(1) Automobile trucks and automobile wagons, (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), 3 per centum;

"(2) Other automobiles and motorcycles, (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), except tractors, 5 per centum;

"(3) Tires, inner tubes, parts, or accessories, for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2), 5 per centum. * * * "

Revenue Act of 1918 (chapter 18, 40 Stat. 1057, 1122); Revenue Act 1921 (42 Stat. 291).

At the time the excise taxes were paid upon the sale of the leaf springs, Article 15 of Regulation 47, promulgated by the Treasury Department on May 1, 1919, was in force and read as follows:

"*Definition of parts.*—A 'part' for an automobile truck, automobile wagon, or other

automobile, or motor cycle is any article designed or manufactured for the special purpose of being used as, or to replace, a component part of any such vehicle, and which by reason of some peculiar characteristic is not such a commercial commodity as would ordinarily be sold for general use, and, which is primarily adaptable only for use as a component part of such vehicle. Mere stock or commercial commodities such as bolts, nuts, washers, screws, though used as components for such vehicles, are not 'parts' within the meaning of subsection (3) of section 900. Articles, however, which ordinarily would be classed as commercial commodities become parts, when, because of their design or construction, they are primarily adaptable for use as component parts of such vehicles. Component parts of articles taxable under this definition are taxable when sold separately, if they have reached such stage of manufacture that they are primarily adaptable for use as such a component part."

On August 8, 1922, the Commissioner of Internal Revenue promulgated Sales Tax Rule 395, holding that leaf springs of the type manufactured and sold by the Tuthill Spring Company for use upon automobiles were not automobile parts within the meaning of section 900 (3). Thereupon the taxes paid by the Tuthill Spring Company for the period from February 25, 1919, to and including June, 1922, were refunded by the Commissioner of Internal Revenue. However, on December 17, 1923, the Commissioner of Internal Revenue issued Sales Tax Ruling 438, in which he revoked the ruling of August 8, 1922, and held that such leaf springs were taxable parts of automobiles. Thereafter, on January 18, 1924, the tax liability of the Tuthill Spring Company having in the meantime been reopened, an excise tax on account of the sale of leaf springs by the Tuthill Spring Company was reassessed for the period of December 19, 1919, to June, 1922, both inclusive. The payment of the taxes so reassessed was protested, but the taxes were collected under distraint. For the recovery of these taxes, suit was instituted by the Tuthill Spring Company against the United States in case No. 35708. This case is submitted on a stipulation of facts. In this case issue was joined on the plea of the general issue and a special plea and a stipulation of facts.

No. 36393 is an action prosecuted by the United States to recover the taxes from February, 1919, to and including November, 1922, which were refunded to the taxpayer.

Both parties have submitted elaborate briefs and arguments. In the view of this case taken by the court, it is unnecessary to review the arguments at length. It is necessary to state only a few leading principles which, in the judgment of the court, are applicable to this case:

1. The taxes in the first instance were properly collected as excise taxes. Universal Battery Co. v. U. S., 281 U. S. 580, 50 S. Ct. 422, 74 L. Ed. 1051. It follows, therefore, that the regulation of August 8, 1922, was without authority and void. It follows, further, that the taxes were erroneously and unlawfully refunded to the taxpayer.

2. Where the erroneous refund was made under a mistaken view of the applicable taxing statute by the administrative officers, the United States may recover by suit the taxes so erroneously refunded, or may reopen the case and redetermine the tax. The court believes that under the repeated decisions of the courts the above principles are well settled and, as above stated, are applicable to this case. Burnet v. Porter, 283 U. S. 230, 51 S. Ct. 416, 75 L. Ed. 996; Champ Spring Co. v. U. S. (D. C.) 38 F.(2d) 988; Id. (C. C. A.) 47 F.(2d) 1; Wisconsin Central Railroad Co. v. U. S., 164 U. S. 190, 17 S. Ct. 45, 41 L. Ed. 399; United States v. Standard Spring Manufacturing Co. (D. C.) 23 F.(2d) 495; Austin Co. v. Commissioner (C. C. A.) 35 F.(2d) 910; McIlhenny v. Commissioner (C. C. A.) 39 F.(2d) 356; Talcott v. U. S. (C. C. A.) 23 F.(2d) 897.

The court, therefore, in both cases, holds for the government. In No. 36393 the demurrer is sustained. In No. 35708 the court holds with the defendant, and will enter judgment dismissing the cause at plaintiff's costs.