González Padín Co., Inc., peticionaria, *v.* Tribunal de Contribuciones de Puerto Rico, demandado; Rafael Buscaglia, Tesorero de Puerto Rico, interventor.

Núm. 91.—*Sometido:* Julio 1, 1946. *Resuelto:* Febrero 26, 1947.

966

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la peticionaria; *Hon. Procurador General Interino Luis Negrón Fernández (E. Campos del Toro, ex Procurador General,* en el alegato) y *Carlos Santana Becerra, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

En 1943 el Tesorero le notificó a Padín ciertas deficiencias de contribuciones sobre ingresos correspondientes a los años 1937 a 1941, inclusive. Padín radicó una solicitud con el Tesorero en la que no solamente le pedía la reconsideración de la deficiencia para el 1938, si que también hacía una reclamación para que se le dedujeran ciertos intereses que había pagado en 1938 pero que no había deducido en su planilla para dicho año. En 1944 el Tesorero denegó esta solicitud en lo que se refería a la reconsideración de la deficiencia del 1938, pero concedió la reclamación para que se dedujeran los intereses que Padín había pagado y dejado de deducir en 1938. Toda vez que estos intereses constituían una suma mayor que las deducciones indebidas en que se basaba la deficiencia de 1938, Padín había pagado en exceso su contribución del 1938. La resolución del Tesorero disponía por tanto: (1) Se había satisfecho la deficiencia del 1938; (2) el exceso en el pago de la contribución para 1938, ascendente a $2,063.15, en vez de reintegrársele a Padín en efectivo, se le abonó a la deficiencia pendiente para el 1939.

No hubo litigio alguno en cuanto al año 1938. Sin embargo, Padín impugnó ante el Tribunal de Contribuciones las deficiencias para los otros años. El Tribunal de Contribuciones, previa la correspondiente vista, redujo en parte la deficiencia para 1939 y ordenó al Tesorero que radicara un nuevo cómputo para 1939 de conformidad con su decisión. Pero cuando el Tesorero radicó el nuevo cómputo en 1946, se negó a incluir en el mismo el crédito por el pago en exceso de la contribución de 1938 para la deficiencia de 1939, por el fundamento de que en 1944 su antecesor había actuado erróneamente al conceder este crédito. Según el Tesorero, este crédito era erróneo por el motivo de que en 1943, cuando Padín por primera vez reclamó los intereses que había dejado de deducir en 1938, la reclamación ya estaba prescrita por el término prescriptivo de cuatro años provisto por la sección 64(b) de la Ley de Contribuciones sobre Ingresos. Padín radicó una oposición al nuevo cómputo para 1939 en tanto en cuanto éste no incluía el crédito por el exceso en el pago de la contribución de 1938. El Tribunal de Contribuciones sostuvo la actuación del Tesorero. Expedimos el auto de *certiorari* a solicitud de Padín para revisar esta decisión del Tribunal de Contribuciones.

I

En su primer error Padín admite *argüendo* que en 1943, cuando por primera vez reclamó que había pagado en exceso la contribución de 1938, ya estaba prescrita una reclamación de reintegro o de crédito del exceso a tenor con la sección 64(b). Pero no obstante alega que cuando el Tesorero le notificó una deficiencia para 1938, con ello abrió para investigación todo el año contributivo, haciéndole posible a Padín hacer la reclamación por la suma pagada en exceso, que resultó cuando dejó de deducir en su planilla de 1938 ciertos intereses pagados en dicho año. Arguye Padín que este resultado emana, ya sea de la doctrina de reconvención (*recoupment*) o de la establecida en *Lewis* v. *Reynolds*, 284 U.S. 281.

Si bien no existe autoridad estatutaria para ello, la reconvención ha sido aplicada a pleitos contributivos para evitar se obtengan ventajas de la inconsistencia: las cortes se han negado a permitirle al Gobierno que tramite una transacción o un evento contributivo a base de determinada teoría y luego, cuando el término prescriptivo impide una acción de reintegro en cuanto a dicha teoría, permitirle cambiar ésta y cobrar una contribución sobre una teoría inconsistente. *Bull* v. *United States,* 295 U.S. 247; *Stone* v. *White,* 301 U.S. 532; *Rothensies* v. *Electric Storage Battery Co.,*___U.S.___, resuelto el 16 de diciembre de 1946; 10 Mertens, *Law of Federal Income Taxation,* sec. 58.39, págs. 328–31; McConnell, *The Doctrine of Recoupment in Federal Taxation,* 28 Va. L. Rev. 577, 583, *et seq.;* Zimet, *Tax Refund Claims and the Statute of Limitations,* 1 Tax Law Rev. 45, 48–50; Maguire y Zimet, *Hobson's Choice in Federal Taxation,* 48 Harv. L. Rev. 1281, 1321–25.

Pero si el propósito de la reconvención en casos contributivos es evitar la inconsistencia en la tramitación de una transacción, surge el hecho de que bajo esta doctrina una reclamación que ya está prescrita puede usarse por medio de la reconvención contra una reclamación del Gobierno por contribuciones solamente si la reclamación de reconvención "es de la naturaleza de una defensa proveniente de algún aspecto de la transacción sobre la cual se basa la acción del demandante." *Bull* v. *United States,* supra, pág. 262. "Nunca se ha tenido en mente que esta doctrina permita que una transacción se compense con otra, sino permitir únicamente que se examine en todos sus aspectos una transacción que es objeto del pleito de un demandante, y que se dicte sentencia y se imparta justicia con vista de la transacción en su totalidad." *Rothensies* v. *Electric Storage Battery Co.,* supra, pág.___.

Qué constituye la misma transacción a los fines de la reconvención es asunto que puede ser de difícil solución en otros casos. Pero este caso no brinda dificultad alguna sobre di-

cha cuestión. La actuación principal del Gobierno envolvía deducciones indebidas hechas por Padín en 1938 por depreciación, deudas incobrables y donaciones. Estas partidas de 1938 no tenían relación alguna con la partida en que Padín basa su reconvención: el no haber deducido los intereses pagados en 1938.(¹) Por tanto, no procede la reconvención en este caso porque la reclamación de reconvención del contribuyente no surge de la misma transacción o del evento idéntico sobre los cuales se basa la reclamación del gobierno.(²)

(¹) Hemos examinado y encontramos claramente insostenible la contención de Padín de que este caso cumple con la fórmula de la "misma transacción", simplemente porque tanto la acción principal como la reclamación de reconvención surgieron del mismo año contributivo. En nuestra discusión que más adelante hacemos del caso de *Lewis* v. *Reynolds,* suponemos que una vez que el gobierno notifica al contribuyente una deficiencia, éste tiene derecho a compensar la deficiencia con un crédito por pago en exceso en cuanto a cualquier otra partida del mismo año, aun cuando la reclamación de compensación no está relacionada con la partida de la deficiencia, y aun cuando un pleito independiente de reintegro en cuanto a la partida compensada estuviera prescrito por otro lado por el término prescriptivo. Como veremos esto está predicado en la teoría de que cuando una parte se toma la iniciativa y abre un año específico, ese año está sujeto a un reajuste completo, y le da derecho al adversario a usar reclamaciones ya prescritas para compensar la reclamación principal. Pero si bien ésta es una doctrina relacionada, es diferente a la reconvención, que está fundada en la teoría equitativa de que todas las contribuciones y los créditos que surgen de la misma transacción—ya se paguen o se obtengan las contribuciones o créditos en los mismos o en diferentes años—deben reajustarse sin referirse al término prescriptivo con el fin de evitar el enriquecimiento injusto de una parte que intenta tramitar inconsistentemente la misma partida en épocas diferentes.

(²) La palabra "transacción" según se usa en la exposición de la doctrina de reconvención en los casos que envuelven partes privadas, y tal como se usa en las disposiciones estatutarias y en las reglas de procedimiento que tratan con la interposición de contrarreclamaciones, ha sido tratada como un término de significado amplio y flexible. Véanse *Moore* v. *N. Y. Cotton Exchange,* 270 U.S. 593, 610; *Lesnik* v. *Public Industrial Corporation,* 144 F.2d 968, 975 (C.C.A. 2d, 1944); *Utilities Service* v. *Walker,* 78 F.2d 18, 23 (C.C.A. 3rd, 1935); 1 Moore's *Federal Practice Under the New Federal Rules* 682–84. *Cf. Avellanet* v. *Porto Rican Express Co.,* 64 D.P.R. 693. Pero todos estos casos tratan sobre cuestiones y hechos que distan mucho de la cuestión aquí presentada; ninguno de ellos envolvía el revivir reclamaciones viejas por medio de la reconvención o cualquier otro recurso procesal. Debe darse énfasis al hecho de que la reconvención en casos contributivos presenta problemas que no están resueltos por las decisiones en otros campos en lo que concierne a qué es la "misma transacción"; y como expone claramente el caso de *Electric Storage Battery Co.,* tiene un alcance mucho más limitado en pleitos contributivos que en otros casos.

La reconvención no prospera aquí por un motivo adicional. Suponemos que bajo el caso de *Lewis* v. *Reynolds*, discutido más adelante, Padín tenía derecho a compensar la deficiencia de 1938 con el exceso en el pago de los intereses en 1938, aun cuando un pleito de reintegro de dicho exceso estuviese prescrito por otro lado. Pero el Tesorero hizo algo más. La reclamación de intereses de 1938 excedía la deficiencia de 1938. El Tesorero, además de considerar satisfecha la deficiencia de 1938, le abonó el exceso a la deficiencia de 1939. Pero el hecho de que éste era un abono a la deficiencia pendiente de 1939, en vez de un pago en efectivo, no convierte este caso en una controversia en relación con la contribución de 1939. Por el contrario, la controversia en este caso nunca ha envuelto nada que no sea la contribución de 1938—tanto las deducciones rechazadas sobre las que se basó la deficiencia como los intereses reclamados usados para compensar la deficiencia, surgieron de transacciones pertenecientes exclusivamente al 1938.

Pero una vez que se admite que aquí solamente está envuelto el año 1938, es obvio que Padín no tenía derecho por vía de la reconvención a que le abonaran los $2,063.15 a la deficiencia de 1939. "La reconvención, distinta a la compensación y a la contrarreclamación estatutarias, no permite una sentencia afirmativa para aquél que la alega con éxito. Es un escudo, no una espada. Lo más que puede hacer es protegerle contra una reclamación del contrario." *Electric Storage Battery Co.* v. *Rothensies*, 152 F.2d 521, 526 (C.C.A. 3, 1945), revocado por otros fundamentos,___U.S.___, supra; *Pennsylvania R. Co.* v. *Miller*, 124 F.2d 160 (C.C.A. 5, 1941); McConnell, supra, 579–86, 603; *Restatement, Judgments,* pág. 217.

Al concederle a Padín este crédito de $2,063.15, el Tesorero resolvió la controversia sobre el 1938 dándole a Padín lo que en efecto era una sentencia afirmativa por dicha cantidad. Pero no hemos encontrado un solo caso, y ninguno ha

citado Padín, en que una reclamación de reconvención haya resultado en una sentencia afirmativa para el demandado. En verdad, la misma teoría de la reconvención en pleitos contributivos—una reclamación inconsistente basada en la misma transacción puede vencerse al extremo de que el reclamante ya se ha beneficiado de una teoría diferente cuya impugnación ya es muy tarde para interponer,—demuestra lo impropio de permitir una sentencia afirmativa. Las cortes no permitirán al demandante, por medio de un término prescriptivo, enriquecerse injustamente usando dos teorías inconsistentes en cuanto a la misma transacción. De la misma manera, si bien las cortes rescatarán al demandado de esta precaria situación, no le concederán una ventaja permitiéndole recobrar una sentencia afirmativa que no hubiera podido obtener en un pleito independiente contra su adversario por medio de una reclamación de reconvención que, por sí sola, ha prescrito.

■ Pasemos ahora al caso de *Lewis* v. *Reynolds,* en que Padín también descansa en su primer señalamiento de error. Dicho caso resuelve que si el contribuyente demanda por reintegro de contribuciones sobre ingresos, el gobierno puede compensar la reclamación del demandante con la responsabilidad de éste sobre cualquier otra partida del *mismo año,* a pesar del hecho de que el término prescriptivo habría impedido por otro lado una notificación de deficiencia por la misma. Véanse *Moran* v. *United States,* 19 F.Supp. 557 (Ct. Cls., 1937); *Globe Gazette Printing Co.* v. *United States,* 13 F. Supp. 422 (Ct. Cls. 1936); *Hendler* v. *United States,* 17 F. Supp. 558, 568 (Dist. Ct., Md., 1936). La opinión en el caso de *Lewis* consiste en efecto de un párrafo que dice como sigue (pág. 283): ''Si bien las leyes que autorizan los reintegros no le dan poder específicamente al Comisionado para reajustar una planilla dondequiera que se reclama un pago en exceso, la autoridad para ello se infiere necesariamente. Antes de que se autorice el reintegro debe aparecer un pago en exceso. Si bien el término prescriptivo puede haber impedido la tasación y el cobro de cualquier suma adicional, no

destruye el derecho de los Estados Unidos a retener los pagos ya recibidos cuando éstos no exceden la cantidad que pudo haberse tasado y exigido correctamente.''

El caso de *Lewis* no envolvía reconvención; envolvía ''reajuste de partidas no relacionadas dentro de un solo año, más bien que reconvención.'' McConnell, supra, pág. 599. Que los dos conceptos si bien relacionados, son diferentes, lo demuestra el hecho de que el caso de *Lewis* no es siquiera citado por la Corte Suprema en los casos de reconvención.

Zimet, supra, pág. 48, expone la base para la doctrina de *Lewis* como sigue: ''. . . existe a los fines de la contribución federal sobre ingresos un concepto fundamental de que la ley impone la contribución con referencia a un período fijo de tiempo. El período anual es una cuestión de necesidad si la ley se va a administrar; se le ha llamado la piedra angular de nuestra estructura contributiva. Ahora, nuestra contribución no se impone, si bien quizá puede imponerse, sobre los ingresos brutos; se impone sobre los netos, para cuya debida determinación deben considerarse y combinarse muchos factores. Si se maneja incorrectamente cualquier factor, todo el cálculo debe hacerse de nuevo. Cuando es necesario que se haga un nuevo cálculo, ya sea mediante una reclamación de reintegro o una tasación de deficiencia, debe ser dicho cálculo lo más correcto posible.''

Suponemos, sin decidirlo, que llegaríamos al mismo resultado que el caso de *Lewis* y que éste es de aplicación tanto cuando el contribuyente como cuando el Tesorero es el demandado. Pero lo mismo que en los casos de reconvención, la doctrina del caso de *Lewis* es un escudo y no una espada —sólo puede utilizarse como una defensa y no para obtener una sentencia afirmativa. McConnell, supra, pág. 605; 52 Harv. L. Rev. 300, 303. Una vez más, como en el caso de reconvención, es claro que a una persona a quien se le permite como cuestión de ajuste equitativo emplear defensivamente una reclamación ya prescrita por otro lado, no puede permitírsele que convierta dicha reclamación en un arma

para obtener una sentencia afirmativa que no hubiera podido obtener de haber radicado demanda por separado.

Una vez que reconocemos que la doctrina del caso de *Lewis* es un escudo y no una espada, aparente es que no se aplica a los hechos de este caso. Toda vez, según hemos visto, que aquí sólo estaba en controversia el ingreso de 1938 —precisamente sólo en el caso en que esté envuelto el ingreso para el mismo año es cuando se aplica el caso de *Lewis*—la reclamación de la demandada por los intereses de 1938 puede a lo sumo compensar la deficiencia de 1938. Pero aquí el antecesor del Tesorero fué más lejos y en adición a tomar dicha medida también le abonó a la deficiencia de 1929 la parte de la reclamación por los intereses de 1938 que excedía la deficiencia para dicho año. Mediante esta última actuación el Tesorero en efecto le concedió a Padín una sentencia afirmativa en violación a la regla de que la doctrina de *Lewis* v. *Reynolds* no puede invocarse para obtener tal sentencia afirmativa.([3])

Pero el arco de Padín tiene otra cuerda. Tiene una reclamación de compensación de 1938 para una deficiencia de 1938. La primera es mayor que la última. No se permite sentencia afirmativa una vez que la reclamación de compensación para 1938 ha satisfecho la deficiencia de 1938. Sin embargo Padín propone que la parte excedente de la reclamación de compensación de 1938 se use para satisfacer una deficiencia no relacionada de 1939. Esto desde luego ampliaría la doctrina de *Lewis* permitiendo que una reclamación de compensación ya prescrita sea usada para satisfacer una reclamación de un demandante aun cuando esta última sea para un año diferente que la reclamación de compensación. Maguire y Zimet, supra, haciendo hincapié en el punto de que

---

([3]) Zimet, supra, dice a la pág. 70: " . . . *Lewis* v. *Reynolds* sólo permite una defensa y no puede usarse para justificar una sentencia afirmativa. Esto puede ser corregido judicialmente; pero de no serlo, debe ser corregido legislativamente." Por los motivos aquí expuestos, no podemos convenir que tal "corrección judicial" deba hacerse.

tanto la decisión como el raciocinio del caso de *Lewis* limitan la reliquidación de la contribución a sólo un año, rechazan esta proposición de Padín a la pág. 1324 como sigue:

"Si se empieza a saltar los límites del año específico a que se contrae la reclamación de reintegro, no se llegaría a ningún punto de parada hasta alcanzar los límites extremos en que dieron comienzo las relaciones económicas entre el gobierno y el contribuyente. Tales acrobacias violentarían las nociones convencionales de la estabilidad legal.

"Argumentándolo concretamente . . . el término prescriptivo prohibe el cobro de más contribución o la concesión de más reintegro, o cualquier cosa a éstos equivalente, pero no la exacta reliquidación. La mera reliquidación procede dentro de los límites de una unidad de doce meses. No procede cuando se pretende gobernar una obligación contributiva de tal unidad con una obligación contributiva ya prescrita perteneciente a otro período igual."

En la Parte II hacemos todo esfuerzo posible para encontrar un término prescriptivo. Por tanto, escasamente parece razonable que destruyamos mediante interpretación judicial el término prescriptivo sobre este punto y permitamos contrarreclamaciones de ambas partes extendiéndose al principio de la imposición de contribuciones en Puerto Rico, simplemente porque un contribuyente o el Tesorero litigue una reclamación contributiva en particular. Más aún, aunque se nos persuadiera de que debemos abrir esta caja de Pandora de litigios, una deficiencia de 1937 ascendente a más de $7,000—suma considerablemente mayor que la que Padín trata de recobrar aquí—fué declarada prescrita por el Tribunal de Contribuciones. La teoría que presenta Padín aquí, de prosperar, nos obligaría a la vez a compensar la deficiencia de 1937 con la reclamación que Padín hace aquí y con ello se eliminaría esta última.

Parece obvio que aun si aceptáramos el caso de *Lewis* v. *Reynolds* en esta jurisdicción, debemos seguir la regla que establece, cual es la de limitar la reliquidación de las contribuciones al año de la reclamación que dió lugar a la controversia. Y esto quiere decir que la parte de la reclamación

de los intereses de 1938 aquí envuelta no puede usarse para compensar la deficiencia de 1939.

## II

Como hemos visto, en 1946 el Tesorero, al radicar un nuevo cómputo, dejó sin efecto aquella parte del crédito por el exceso pagado en la contribución de 1938, que su antecesor le había concedido a Padín en 1944 para abonarlo a una deficiencia pendiente para 1939. El segundo señalamiento de error es que si al radicar este nuevo cómputo en 1946 el Tesorero estaba en efecto notificando a Padín de una nueva deficiencia para 1938, esta nueva deficiencia estaba prescrita por el término de siete años provisto en la sección 60(a)(1) de la Ley de Contribuciones sobre Ingresos.

█ Cuando el Tesorero llega a la conclsión de que por error ha hecho un reintegro erróneo, éste puede reabrir el caso, reliquidar la contribución rechazando el reintegro y enviarle al contribuyente la notificación de una nueva deficiencia, siempre y cuando que el término prescriptivo no haya expirado. *Burnet* v. *Porter*, 283 U.S. 230; *Page v. Lafayette Worsted Co.*, 66 F.2d 339 (C.C.A. 1, 1933); *Austin Co.* v. *Commissioner of Internal Revenue*, 35 F.2d 910 (C.C.A. 6, 1929); 10 Mertens, supra, sec. 58.103, págs. 425–26; Maguire y Zimet, supra, págs. 1292–93, nota 40; 49 Yale L. J. 1250, 1265.

█ Suponemos, sin decidirlo, que la radicación por el Tesorero de un nuevo cómputo en 1946 equivalía a una notificación de nueva deficiencia para 1938, a pesar del hecho de que se hizo dentro de un procedimiento que envolvía una contribución de 1939 y a pesar de que el Tesorero no siguió el procedimiento estatutario establecido para ello. Véanse *Ballester* v. *Tribunal de Apelación de Contribuciones*, 60 D.P.R. 768; *Fiddler* v. *Tribunal de Contribuciones*, 65 D.P.R. 202. *Cf. P. R. Ry., Lt. & P. Co.* v. *Buscaglia, Tes.*, 62 D.P.R. 597. La dificultad estriba en que con el fin de ajustarlo lo más posible a la definición estatutaria de una deficiencia, véase *Ba-*

*llester* v. *Tribunal de Apelación de Contribuciones,* supra, el dinero envuelto en el reintegro erróneo es tratado como si nunca se hubiera pagado originalmente por el contribuyente. Por tanto el término prescriptivo para tal nueva deficiencia se calcula desde la fecha en que hubiera empezado a correr si la contribución nunca se hubiera pagado originalmente, y no desde la fecha del reintegro erróneo. *Carney Coal Co.* v. *Commissioner,* 10 B.T.A. 1397, 1403-04; *C. E. McCutchen* v. *Commissioner,* 16 B.T.A. 569; 10 Mertens, supra, pág. 426, casos citados en las notas 92, 93. En su consecuencia, el derecho del Tesorero a notificar a Padín una nueva deficiencia empezó a correr en 1938 y ya había prescrito cuando el Tesorero radicó su cómputo en 1946.

Aparentemente el Tribunal de Contribuciones decidió que si la actuación del Tesorero fuera considerada como una notificación de una nueva deficiencia, no estaría prescrita porque la deficiencia era para 1939, la que todavía se podía imponer en 1946. Esto fué erróneo. Como ya hemos indicado, esta controversia gira exclusivamente en torno a la deducibilidad de una pequeña parte de los intereses pagados por Padín en 1938. El Tesorero no creó una controversia en relación con la contribución de 1939 cuando le abonó a Padín el exceso de la contribución de 1938 a la deficiencia de 1939 en vez de hacer un reintegro en efectivo por el pago en exceso de 1938. La deficiencia—de haber sido una—es para 1938, y no para 1939. Por tanto está prescrita por el término de siete años provisto en la sección 60(*a*)(1).

▋ Sin embargo, la notificación de una nueva deficiencia no es el único método que tiene el Tesorero para cobrar las contribuciones. Puede entablar un pleito para el cobro de contribuciones sin tasar una deficiencia, dentro del período de siete años provisto por las secciones 60(1) y 61(*c*) de la Ley de Contribuciones sobre Ingresos. Por tanto, surge la cuestión en cuanto a si la modificación del cómputo hecho por el Tesorero en 1946 fué en sustancia un pleito para cobrar contribuciones de 1938 sin la tasación de una deficiencia.

■■ Conocemos la historia de los pleitos para recobrar reintegros erróneos en el sistema federal. Los casos federales resuelven (*a*) que tal pleito no es un procedimiento para el cobro de contribuciones, sino más bien un pleito cuya radicación el gobierno siempre ha tenido derecho a efectuar para recobrar dinero ilegalmente pagado por error por un funcionario gubernativo. *Smyth* v. *United States,* 92 F.2d 900 (C. C.A. 10, 1937); *United States* v. *Tuthill Spring Co.,* 55 F.2d 415 (Dist. Ct., Ill., 1931); *Champ Spring Co.* v. *United States,* 38 F.2d 988 (Dist. Ct., Mo., 1929); *Talcott* v. *United States,* 23 F.2d 897 (C.C.A. 9, 1928); *Craig* v. *Commissioner,* 18 B. T.A. 86, 90; y (b) que en ausencia de una disposición legislativa específica para ello, el término prescriptivo nunca corre contra tal pleito. *United States* v. *Wurts,* 303 U.S. 414; *Smyth* v. *United States,* supra; *Woolner Distilling Co.* v. *United States,* 62 F.2d 228 (C.C.A. 7, 1932); *United States* v. *Bartron,* 35 F.2d 765 (Dist. Ct., S.D., 1929).

Al resolver los casos federales que no había prescripción contra los pleitos para recobrar los reintegros erróneos, el Congreso se dió cuenta en seguida del resultado injusto. Por tanto aprobó la sección 610 de la Ley de Rentas Internas de 1928, 26 U.S.C.A., Leyes de Rentas Internas, págs. 460–61, disponiendo que tales pleitos deben radicarse dentro de dos años después de hacerse el reintegro. Y en vista de los casos resueltos con anterioridad al 1928 al efecto de que todavía no existía tal término prescriptivo, se ha resuelto que la sección 610 "no concedió al Gobierno un nuevo derecho, sino que es una limitación del derecho del Gobierno establecido hacía tiempo a demandar en cobro de dinero ilegal o erróneamente pagado del tesoro público," *United States* v. *Wurts,* supra, pág. 416; Seidman's *Legislative History of Federal Income Tax Laws,* págs. 569–72; *United States* v. *Bartron,* supra; 10 Mertens, supra, secs. 58.101–104, págs. 422–27.

Las secciones 60(1) y 61(c) fueron copiadas en 1924 por nuestra Legislatura de la Ley Federal. Por tanto, se puede argumentar que lo mismo que en el sistema federal un pleito

para recobrar un reintegro erróneo no es un pleito para cobrar contribuciones, sino un pleito para recobrar dinero ilegalmente pagado por error por un funcionario gubernativo; y que toda vez que nuestra Legislatura no ha seguido la pauta del Congreso al aprobar la sección 610 en 1928, no existe término prescriptivo contra tal pleito.[3a]

Sin embargo, los casos que resuelven que la Ley Federal, de la que fueron copiadas las secciones 60(1) y 61(c) en 1924, no incluía un término prescriptivo para pleitos por reintegros erróneos, fueron resueltos, según hemos encontrado, con posterioridad a 1924 y por tanto no nos obligan. Pero aparte de las fechas de dichos casos federales, no podemos convenir que, como problema de procedimiento y jurisdicción bajo la ley local, un pleito para recobrar un reintegro erróneo no es un pleito en cobro de contribuciones. Debe recordarse que no nos preocupamos, como en el sistema federal, con el problema de determinar cuál de tres cortes—el Tribunal Contributivo, la corte de distrito o la Corte de Reclamaciones—tiene jurisdicción en un caso específico proveniente de una controversia sobre contribuciones. *Cf. Commissioner* v. *Gooch Co.*, 320 U.S. 418. Cuando el Tesorero demanda para recobrar un reintegro erróneo, trata de cobrar una deuda proveniente de una obligación contributiva lo mismo que si él hubiera reliquidado la contribución y enviado una notificación de nueva deficiencia lo que, como hemos visto, los casos resuelven puede hacer para recobrar un reintegro erróneo. Y la corte ante la cual se ventila el caso estará llamada a decidir una cuestión de responsabilidad contributiva. En verdad, esto es suficiente para conferirle jurisdicción a nuestro Tribunal de Contribuciones, toda vez que dicho Tribunal tiene jurisdicción exclusiva sobre "todas las acciones . . . y reclamaciones de cualquier índole, relaciona-

---

[3a] En vista del resultado a que llegamos en el siguiente párrafo, suponemos, sin decidirlo, que el término prescriptivo general de quince años contenido en el artículo 1864 del Código Civil, no es de aplicación a un pleito instado por el Gobierno para recobrar un reintegro erróneo de contribuciones.

das con, o que afecten la imposición, cobro, pago, devolución o reembolso de toda clase de contribuciones. . .'' Sección 4, Ley núm. 169, Leyes de Puerto Rico, 1943; *Andréu Aguilar & Co.* v. *Corte,* 64 D.P.R. 809. Por tanto, somos de opinión que, sin referirnos a la dialéctica a que recurren los casos federales para determinar qué corte tiene jurisdicción en un caso específico, un pleito para recobrar un reintegro erróneo en esta jurisdicción es en sustancia un pleito en cobro de contribuciones. Y como hemos visto, un pleito en cobro de contribuciones está gobernado por el período prescriptivo de siete años provisto en las secciones 60(*a*)(1) y 61(*c*).

Resolver lo contrario equivaldría a decir que la Legislatura tuvo la intención de dejar pendiente para siempre la cuestión de si el Tesorero hizo un reintegro erróneo. No estamos preparados para imputarle a la Legislatura tan irrazonable intención. En verdad, todas las consideraciones a favor de un estatuto de estabilidad en el que descansa el Tesorero en la Parte I y que se mencionan en el caso de *Electric Storage Battery Co.* se aplican con igual fuerza al presente.(⁴)

▉ Habiendo llegado a la conclusión de que el período prescriptivo de siete años para los pleitos en cobro de contri-

---

(⁴) ''Probablemente sería casi intolerable, por lo menos el Congreso lo ha catalogado como poco aconsejable, el tener un sistema de contribuciones sobre ingresos bajo el cual nunca se llegaría al día en que se termine la controversia y que exija al contribuyente y al gobierno estar listo para el día menos pensado presentar comprobantes, probar acontecimientos, establecer valores y recordar detalles de todo lo que comprende una controversia de contribuciones sobre ingresos. De ahí que un término prescriptivo sea un elemento casi indispensable de justicia y de administración práctica de una política de contribuciones sobre ingresos.

''Recientemente hemos tenido la oportunidad de señalar la razón y el carácter de tales períodos prescriptivos. 'Los períodos prescriptivos, como la doctrina de equidad sobre incuria (*laches*) en sus efectos concluyentes, están diseñados para promover la justicia evitando las sorpresas mediante el resurgimiento de reclamaciones que se han dejado quietas hasta que se haya perdido la evidencia, la memoria haya fallado, y se han desaparecido los testigos. La teoría es que aun cuando una persona tiene una reclamación meritoria, no es justo no poner al adversario sobre aviso para defenderse dentro del período de prescripción y que el derecho de estar libre de reclamaciones viejas viene a prevalecer después de cierto tiempo sobre el derecho a proseguirlas' . . .''.——U.S.——.

buciones se aplica al presente, debemos determinar cuándo empieza a correr dicho término. La sección 610, aprobada por el Congreso en 1928, específicamente provee que en un pleito para recobrar un reintegro erróneo, la prescripción empieza a correr desde la fecha del pago del reintegro, y no de su concesión. *United States* v. *Wurts,* supra. La sección 610, desde luego, no es de aplicación aquí. Pero el caso de *Wurts* indica a la página 418 un principio general que también es pertinente en este caso: el término no empieza a correr hasta que el derecho del gobierno ha tomado una forma que puede hacerse valer efectivamente.

Cuando el Tesorero trata de recobrar un reintegro erróneo mediante una notificación de deficiencia, debe tratarse el caso, como hemos visto, como si la contribución nunca se hubiera pagado originalmente, con el fin de cumplir con la definición estatutaria de una deficiencia, y en su consecuencia el término empieza a correr desde la fecha en que se radica la planilla. Pero la situación es necesariamente diferente cuando en su lugar está envuelto un pleito para recobrar un reintegro erróneo. Concedemos *argüendo* para beneficio del contribuyente que el crédito en 1944 del exceso en el pago de la contribución de 1938 para abonar a la deficiencia pendiente para 1939, equivalió a un pago en efectivo.(⁵) Sin embargo, el Tesorero no tenía una causa de acción contra Padín que él pudiera hacer valer efectivamente hasta 1944, por la sencilla razón de que el Tesorero escasamente podía recobrar un reintegro erróneo antes de que de hecho concediera el reintegro en 1944. *Paulson* v. *United States,* 78 F.2d 97 (C. C.A. 10, 1935). Y tratando la modificación del Tesorero al cómputo en 1946 como si de hecho fuera un pleito para recobrar un reintegro erróneo,(⁶) el pleito para recobrar el re-

---

(⁵) Véanse *United States* v. *Swift & Co.* y *United States* v. *Botany Worsted Mills, infra,* discutidos en la Parte III.

(⁶) Las razones para tratar la modificación del cómputo del Tesorero como en efecto un pleito para recobrar un reintegro erróneo están discutidas en la Parte III, infra.

integro erróneo hecho en 1944 no está prescrito: se radicó en 1946, varios años antes de que expirara el término prescriptivo de siete años.

El resultado a que llegamos no es tan satisfactorio como el provisto por el Congreso cuando aprobó la sección 610 de la Ley Federal de 1928 como un estatuto de estabilidad. Allí, si el Comisionado desea radicar un pleito para recobrar un reintegro erróneo, debe hacerlo dentro de dos años de hacerse el pago del reintegro al contribuyente. Aquí, el contribuyente viene obligado a considerar su responsabilidad contributiva para determinado año como no liquidada definitivamente por un período considerablemente mayor: el contribuyente tiene cuatro años para solicitar el reintegro de un pago en exceso,[7] y el Tesorero tiene siete años más. después de pagar el reintegro para radicar pleito con el fin de recobrarlo como un reintegro erróneo. Pero por lo menos, como ya se ha indicado, hemos evitado el resultado de los casos federales resueltos entre 1924 y 1928 que decidieron que este último derecho del Tesorero nunca prescribía.

Resta sólo indicar que se clasifica un reintegro como erróneo si se hizo en virtud de una reclamación que como en este caso ya estaba prescrita por el término prescriptivo cuando la reclamación se hizo por primera vez.[8] Esto quedó demostrado por la historia de la sección 610 de la Ley Federal de 1928. Como hemos visto, la sección 610 no creó el derecho al reintegro sino que instituyó un período de pres-

---

[7] Véase la Parte IV, infra.

[8] No consideramos la cuestión en este caso de si un reintegro de una reclamación prescrita podría recobrarse por el Tesorero como un reintegro erróneo si en vez de hacer caso omiso del término prescriptivo, el Tesorero hubiera hecho reintegro deliberadamente, ya sea con o sin un acuerdo final por escrito a tenor con la sección 73 de la Ley de Contribución sobre Ingresos. *Botany Worsted Mills* v. *United States*, 278 U.S. 282; *L. Loewy & Son* v. *Commissioner of Internal Revenue*, 31 F.2d 652 (C.C.A. 2, 1929). Toda vez que no hay prueba en el récord de este caso al efecto de que el Tesorero a sabiendas trató de renunciar al término prescriptivo al hacer este reintegro, dejamos esta cuestión para otra ocasión. Véase *United States* v. *Garbutt Oil Co.*, 302 U.S. 528; *cf. United States* v. *Michel*, 282 U.S. 656.

cripción sobre un derecho existente. *United States* v. *Wurts,* supra. La sección 608, que define como erróneos los reintegros de reclamaciones prescritas, no es la fuente exclusiva del derecho al reintegro; todavía existen, independientemente de la sección 608, otros tipos de reintegros no cubiertos por sus términos, aunque al presente sujetos al período prescriptivo de dos años de la sección 610. *Smyth* v. *United States,* supra; *Hughes* v. *Commissioner,* 21 B.T.A. 1075. Por tanto todavía es una cuestión sin resolver qué otras clases de reintegros pueden clasificarse como erróneos. Pero a nuestros fines, lo importante de la sección 608 es que al definir un reintegro erróneo—con el propósito de establecer un término prescriptivo sobre un derecho existente, no para crear uno—específicamente define como erróneo un reintegro hecho después que la reclamación correspondiente ha prescrito. El resultado final es que no importa cuántos otros reintegros puedan o no clasificarse como erróneos, el reintegro en este caso fué y es un tipo clásico de reintegro erróneo anterior a e independientemente de la sec. 608. Por tanto, es un reintegro erróneo dentro del significado de nuestra Ley, que no tiene ni la sección 608 ni la 610. Y esto es cierto prescindiendo de los méritos de la reclamación antes de que ésta prescribiera. 10 Mertens, supra, sec. 58.01, pág. 424, nota 87; véase *Smyth* v. *United States,* supra.

## III

Padín alega que el crédito conferídole por el Tesorero de una parte del exceso en el pago de su contribución para 1938 para abonarlo a su deficiencia pendiente para 1939 equivalía a un reintegro del mismo en efectivo, y que en su consecuencia el único medio que tiene el Tesorero para desenredar esta transacción ya terminada es demandar a Padín en un pleito nuevo e independiente con el fin de recobrar el referido reintegro como erróneo, y no como hizo aquí modificando el cómputo para la deficiencia de 1939.

 Seguidamente convenimos en que la regla está establecida claramente como una proposición general que el abonar un exceso en el pago de las contribuciones para determinado año a contribuciones pendientes de pago para otro año, constituye pago de estas últimas de manera tan efectiva como si tales pagos se hubieran hecho en dinero. *United States* v. *Swift & Co.*, 282 U.S. 468; *United States* v. *Botany Worsted Mills*, 98 F.2d 880 (C.C.A. 3, 1938). Y reconocemos que en su consecuencia procede que "Cuando se determina más tarde que el abono del exceso fué erróneo, la deuda contra la cual se abonó el exceso y se dió por extinguida, permanece extinguida. En tal caso, se ha resuelto que la única cuestión de responsabilidad contributiva pendiente se relaciona con el año respecto del cual se concedió el abono erróneo." 10 Mertens, supra, sec. 58.35, pág. 321. En verdad, ya habíamos llegado a esta última conclusión cuando resolvimos en la Parte II que una deficiencia estaba prescrita aquí porque la suma en controversia envolvía una contribución de 1938 (año en que se hizo el pago en exceso erróneamente) y no de 1939 (el año a que se abonó el crédito). Pero la aceptación de éstas dos exposiciones de la ley no exige necesariamente la conclusión de que el Tesorero debe en su consecuencia instar una nueva acción por la cantidad aquí envuelta.

En el caso de *Commissioner of Internal Revenue* v. *Newport Industries, Inc.*, 121 F.2d 655 (C.C.A. 7, 1941), la Corte fué aún más lejos que nuestro Tribunal de Contribuciones en este caso. En el caso de *Newport* el Comisionado concedió una reclamación por un pago en exceso y lo abonó a una deficiencia de un año anterior. El balance en descubierto para el año anterior fué pagado por el contribuyente. Luego, el Comisionado llegó a la conclusión de que había concedido erróneamente la reclamación por el exceso en el pago. Entonces dejó sin efecto la reclamación del exceso revocando el crédito abonado a la deficiencia para el año anterior y reinstalando la referida deficiencia. La Corte Contributiva re-

solvió que la reclamación por el exceso en el pago era la partida en controversia; que la concesión de un crédito para abonárselo a una deficiencia de un año anterior equivalía a pagarlo en efectivo; que sólo procedía un pleito para reclamar un reintegro erróneo; y que por tanto la actuación del Comisionado al reinstalar la deficiencia para el año anterior era errónea. 40 B.T.A. 980. La Corte de Circuito, si bien aparentemente concediendo que el año en que se pagó en exceso, y no el año anterior, era lo que estaba en controversia, sin embargo revocó a la Corte Contributiva y sostuvo la actuación del Comisionado, en vista del hecho de que el término prescriptivo no había vencido para un pleito en cobro de un reintegro erróneo. Dijo a la pág. 657:

"Alega el demandado no que el Comisionado carezca de autoridad para corregir una actuación errónea, sino que no debe ejercitar esta autoridad excepto mediante un pleito para recobrar el reintegro erróneo. En este caso, en vez de radicar tal pleito, el Comisionado sencillamente revocó el crédito, consiguiendo el mismo resultado. En verdad el recurrir a un método para corregir el error en vez de recurrir al otro, no privó al demandado de algo a que tuviera derecho, porque de haber error, el demandado todavía le debe al Gobierno, e importa poco al demandado qué forma asuma dicha deuda. Toda vez que no vemos objeción legal a los métodos elegidos por el Comisionado, condenarlos sería intervenir indebidamente con la discreción administrativa."

Aquí, lo mismo que en el caso de *Newport,* el término prescriptivo no había vencido contra un pleito en cobro del reintegro erróneo. Por tanto parece que sería una formalidad inútil si resolviéramos que el Gobierno debe demandar independientemente para el cobro de un reintegro erróneo en la contribución de 1938 y no puede conseguir el mismo resultado práctico retirando el crédito concedídole a Padín para abonarlo a su deficiencia de 1939. Y esto parece particularmente así en esta jurisdicción donde, contrario al sistema federal, todos los casos contributivos se ventilan ante la misma corte.

Sin embargo, no es necesario decidir si vamos a ir tan lejos como el caso de *Newport.* Véase 10 Mertens, supra,

págs. 322-3, nota 54. En dicho caso la controversia contributiva referente al año anterior había sido terminada mediante el pago del balance por el contribuyente, y el Comisionado la revivió con una deficiencia que envolvía la contribución para otro año. Nuestros hechos son diferentes. Si bien el pago en exceso de 1938 había sido abonado a la deficiencia de 1939, el balance de ésta no se había pagado aún. El caso que trataba de la deficiencia de 1939, todavía estaba pendiente en el Tribunal de Contribuciones, que había ordenado al Tesorero la radicación de un nuevo cómputo. A pesar de la regla de que tal crédito equivale a dinero en efectivo, el dinero propiamente dicho todavía estaba en manos del Gobierno.

En *Otis Elevator Co.* v. *United States,* 36 F. Supp. 328 (Ct. Cls., 1941) la Corte se confrontó con una situación parecida. Allí el Comisionado resolvió que la contribuyente había pagado en exceso su contribución para 1930, pero retuvo el reintegro del exceso hasta que se determinara la responsabilidad contributiva de la contribuyente para otros años que estaban pendientes ante la Junta de Apelaciones Contributivas. Más tarde, el Comisionado se revocó en cuanto al exceso en el pago de 1930, resolviendo que como cuestión de hecho había una deficiencia en vez de un exceso en el pago para dicho año. Al resolver el pleito traído por la contribuyente a favor del Gobierno, la Corte dijo (pág. 332): "aun cuando las contribuciones se hubieran de hecho reintegrado y si surge luego que se reintegraron erróneamente, los Estados Unidos pueden radicar un pleito y recobrarlas. *Talcott* v. *United States,* 9 Cir., 23 F.2d 897, y casos allí citados. *Champ Spring Co.* v. *United States,* 8 Cir., 47 F.2d 1. *A fortiori,* si antes de que se haga un reintegro de las mismas, se descubre que como cuestión de hecho la demandante no ha pagado en exceso su contribución, no es necesario reintegro alguno." Véanse también *Daube* v. *United States,* 289 U.S. 367, 371-2; *Ridgway* v. *United States,* 18 Ct. Cls. 707, 714-15; *United States* v. *Michel,* 282 U.S. 656; *Stone* v. *White,* supra; Parker, *Administrative Res Judicata,* 40 Ill. L. Rev. 56, 69-70.

En resumen, aquí el Tesorero estaba impedido por el término prescriptivo de tasar una nueva deficiencia. Pero no estaba impedido por el término prescriptivo de radicar un pleito en cobro de un reintegro erróneo. Y a pesar del hecho de que la única cuestión aquí en controversia envolvía un reintegro erróneo para 1938 mientras que el caso pendiente ante el Tribunal de Contribuciones trataba del año 1939, este Tribunal no obstante no exigirá la mera formalidad de un nuevo pleito independiente para el cobro del reintegro erróneo de 1938, si el Tesorero en vez de hacer el reintegro erró· neo en efectivo lo abonó a una deficiencia pendiente en 1939 y luego descubrió que el reintegro era erróneo antes de la terminación del caso pendiente que envolvía la deficiencia de 1939. Bajo dichas circunstancias el Tesorero puede dejar sin efecto el reintegro y retirar el crédito abonádole a la deficiencia pendiente de 1939. En verdad esto está conforme al espíritu, si no a la letra, de la sección 64(a) de la Ley de Contribuciones sobre Ingresos de que los pagos en exceso de contribuciones serán abonados a cualquier contribución sobre ingresos que adeude el contribuyente y al artículo 124 del Código Político de que "No se pagará dinero a ninguna persona por concepto de . . . reclamación entablada contra la Tesorería Insular, si el interesado se hallare en descubierto con el Pueblo de Puerto Rico, por deudas atrasadas . . . mientras no hubiere aquél arreglado sus cuentas con el Tesorero de Puerto Rico y satisfecho a éste todas las cantidades de las cuales fuere responsable. . .". Véase *Cherry Cotton Mills v. United States,* 327 U.S. 536.

Finalmente, Padín se queja de que el Tribunal de Contribuciones no tenía jurisdicción sobre la cuestión aquí en controversia. Pero ya hemos indicado en la Parte II que, con el fin de concederle a los contribuyentes el beneficio del término prescriptivo que se halla en las secciones 60(1) y 61(c), resolveríamos, contrario a los casos federales, que un pleito para recobrar un reintegro erróneo es un pleito en cobro de contribuciones. Una vez que lleguemos al resultado de que

la controversia en este caso es en efecto un pleito para cobrar contribuciones, de la misma manera la sección 4 de la Ley núm. 169 que crea el Tribunal de Contribuciones confiere jurisdicción a dicho Tribunal para resolver este caso.

Tampoco nos impresiona el argumento de que ninguna resolución administrativa del Tesorero—requisito previo bajo la sección 4 para conferirle jurisdicción al Tribunal de Contribuciones—se dictó en este caso. Debe tenerse en cuenta que éste no es un caso en que el contribuyente trata de obtener remedio del Tribunal de Contribuciones. Aquí el propio Tesorero ha hecho una determinación administrativa que a su vez lo ha llevado a hacer una reclamación ante el Tribunal de Contribuciones. Bajo dichas circunstancias la actuación del Tesorero al enmendar su cómputo, junto a su escrito de oposición a la solicitud de Padín para que se restaure el cómputo original, constituyó cumplimiento sustancial con el requisito de la sección 4 para que se emita una resolución administrativa. *Cf. Andréu, Aguilar & Co.* v. *Corte,* supra.(⁹)

Enfáticamente convenimos con Padín y el Tribunal de Contribuciones que el Tesorero debería litigar tales cuestiones tratando de enmendar las alegaciones más bien que sometiendo un cómputo, después que se ha resuelto el caso, calculado sobre una teoría diferente a aquélla sobre la cual se juzgó el mismo. Y el Tribunal de Contribuciones deberá en el futuro, como cuestión de pureza en los procedimientos, exigir alegaciones enmendadas más bien que la remisión de un cómputo que envuelve cuestiones substantivas ajenas a

---

(⁹) Padín aparentemente no trae el argumento de que la regla altamente técnica de *Ramón Morán & Cía.* v. *Corte de Distrito,* 55 D.P.R. 637, al efecto de que un pleito en cobro de contribuciones debe instarse por El Pueblo de Puerto Rico, representado por el Gobernador, y no por el Tesorero, prevalece de acuerdo con las leyes vigentes. En *Andréu, Aguilar & Co.* v. *Corte,* supra, dijimos a la pág. 814: "Opinamos que el propósito de la ley creando el Tribunal de Contribuciones fué el de establecer un tribunal, con jurisdicción exclusiva, ante el cual puedan comparecer, tanto los contribuyentes como el Tesorero de Puerto Rico, e incoar cualquier acción, procedimiento o recurso que esté relacionado con o que afecte la imposición, cobro, pago, devolución o reembolso de toda clase de contribuciones y arbitrios."

aquéllas suscitadas por las alegaciones. Pero si al contribuyente se le da la debida oportunidad de confrontarse con la nueva cuestión suscitada, como pasó en este caso, no vemos qué error perjudicial sufre el contribuyente por el procedimiento aquí seguido. Véanse *Fiddler* v. *Tribunal de Contribuciones,* 65 D.P.R. 202; *Buscaglia* v. *Tribunal de Contribuciones,* 65 D.P.R. 972.

## IV

Hemos estado suponiendo que el reintegro hecho por el Tesorero en 1943 por el exceso en el pago de la contribución de 1938 fué erróneo porque la reclamación para ello no se hizo dentro de cuatro años desde la fecha en que la contribución se pagó, estando por tanto prescrita bajo la sección 64(*b*) de la Ley de Contribuciones sobre Ingresos. Pero alega Padín que este reintegro se hizo a tenor con la sección 75, no a tenor con la 64, de la Ley; y que en la 75 no hay término prescriptivo para las reclamaciones; y en su consecuencia que el reintegro no fué erróneo.([10])

La sección 64(*a*) provee que "cuando cualquier contribución sobre ingresos . . . impuesta por esta Ley . . . se hubiere *pagado en exceso,* el montante de dicho exceso será acreditado a cualquier contribución sobre ingresos . . . que estuviere vencido y [a] cualquier remanente de dicho exceso será reintegrado inmediatamente al contribuyente." La sección 64(*b*) dispone que ". . . no se concederá ningún crédito o reintegro después de cuatro años desde la fecha *de pago* de la contribución, a menos que antes de vencidos esos cuatro años el contribuyente radique una reclamación. . .". (Bastardillas nuestras.)

Por otro lado, la sección 75 dice como sigue: "El Tesorero queda autorizado para remitir, reintegrar y devolver to-

---

([10]) Suponemos, sin decidirlo, que cuando Padín incluyó en su moción de reconsideración de la deficiencia de 1938, una reclamación por el pago en exceso de la contribución de 1938 por haber dejado de deducir los intereses pagados en 1938 cumplió con los requisitos para una solicitud de reintegro.

Aquí también, lo mismo que en la nota 3a, creemos innecesario investigar si el artículo 1864 del Código Civil es de aplicación a este punto.

das las contribuciones erróneas o ilegalmente impuestas o cobradas y las penalidades cobradas sin autoridad, y toda contribución que aparezca injustamente impuesta o en cantidad excesiva o de cualquier manera erróneamente cobrada; y hará un informe a la Legislatura de Puerto Rico al empezar cada sesión ordinaria, de todas las transacciones que en esta sección se autorizan.''

Al copiar la sección 64 de la Ley Federal, nuestra Legislatura también copió la disposición de la misma que contenía un término de prescripción. Pero cuando copió la 75, omitió el término prescriptivo que se encuentra en el estatuto Federal. *Cf. Bonet* v. *Yabucoa Sugar Co.*, 306 U.S. 505, 509. Esto puede haber sido debido al hecho de que el remedio bajo la sección 75 para dicha fecha en casos de pagos voluntarios era solamente administrativo y no se podía hacer valer judicialmente. *Bonet* v. *Yabucoa*, supra. Pero ahora que tal caso, que surge de la sección 75, puede litigarse en las cortes, *The Coca Cola Export Sales Co.* v. *Tribunal de Contribuciones*, 65 D.P.R. 152, un término prescriptivo, aunque no exista todavía, es tan necesario para dichos casos como para aquéllos que surgen de la sección 64. Véase nota 4. Y ciertamente no hay razón alguna para que ampliemos el alcance de la sección 75 con el fin de aplicarla a los casos que la misma no cubre claramente. Por el contrario, todas las consideraciones políticas a favor de un término prescriptivo que se consideran a través de esta opinión nos llevan a la conclusión de que la sección 75, sin un término prescriptivo, de ser posible no debe interpretarse como que absorbe los casos que caen en la sección 64, que sí contiene un término prescriptivo. ''Más vale algo que nada'' es tan cierto en la ley prescriptiva como en cualquier otra parte. Con estas consideraciones en mente, pasamos al problema de determinar si la sección 64 o la 75 se aplican a los hechos del presente caso.

No vemos fin práctico alguno en examinar en detalle la historia legislativa de las secciones 64 y 75 y sus equivalen-

tes federales, con la excepción de indicar que los casos federales aparentemente resuelven que las equivalentes federales a las secciones 64 y 75 se refieren a diferentes materias: el pago por el contribuyente a iniciativa propia frente al pago hecho a instancia del Tesorero. *Huntley* v. *Southern Oregon Sales, Inc.*, 102 F.2d 538 (C.C.A. 9, 1939); *United States* v. *The Lederer Terminal Warehouse* Co., 139 F.2d 679 (C.C.A. 6, 1943); *In re Tindle's Estate*, 59 F. Supp. 667 (Dist. Ct., Pa., 1945). Al indicar que el equivalente federal de la sección 64, con un corto período prescriptivo, se aplica a los pleitos para recobrar pagos en exceso, mientras que el equivalente federal de la sección 75, con un período prescriptivo mayor, se aplica a tasaciones y cobros erróneos o ilegales por parte del Tesorero, estos casos federales afirman que el Congreso evidentemente consideró que ''se necesita menos tiempo para descubrir errores en las planillas contributivas provenientes de cálculos erróneos o de meros pagos en exceso que para determinar la naturaleza errónea o ilegal de una tasación.'' *United States* v. *The Lederer Terminal Warehouse Co.*, supra, 681; *Huntley* v. *Southern Oregon Sales Inc.*, supra, 543.

Si esos casos federales fueran decisivos, nuestra búsqueda tocaría a su fin: éste es un pleito de reintegro de un pago en exceso y por tanto la sección 64 es de aplicación con su término prescriptivo. Pero este caso no nos exige determinar si estaríamos dispuestos a seguir en todas las ocasiones los casos federales que establecen la diferencia arriba indicada entre pleitos traídos bajo los equivalentes federales de las secciones 64 y 75. Tampoco creemos necesario en este caso desentrañar las secciones 64 y 75 que con frecuencia han sido consideradas conjuntamente. Artículo 341, Reglamento; *The Coca Cola Export Sales Co.* v. *Tribunal de Contribuciones*, supra; *Sucesores de A. Mayol & Co., Inc.* v. *Sancho, Tes.*, 51 D.P.R. 149. La contención de Padín cae aquí por un motivo más fundamental. De prevalecer tenemos que resolver que

*únicamente* la sección 75 se aplica a este caso. Esto es así porque si la sección 64 así como la 75 se aplican, entra en juego el estatuto prescriptivo de cuatro años de la sección 64. Pero los claros términos de la sección 64 proveen un período prescriptivo para reintegro de exceso en el pago de contribuciones, que es exactamente lo que está envuelto aquí. Y toda vez que Padín no hizo su reclamación dentro del período prescriptivo provisto en la sección 64, basta esto para resolver este punto contra Padín.(11)

 Tampoco puede alegarse que Padín tenía derecho a radicar una solicitud de reintegro sin ningún término prescriptivo de conformidad con la Ley de 12 de febrero de 1904 (Stat. Comp. 1911, Sección 2365). Rechazamos una contención similar en *Loíza Sugar Co.* v. *Domenech, Tesorero*, 45 D.P.R. 304. La regla es que si existe una ley especial referente a una contribución específica—en este caso, la sección 64(*a*)—esta última y no una ley general, cual lo es la Ley de 1904, gobierna. *Loíza Sugar Co.* v. *Domenech, Tesorero*, supra; *P. R. Fertilizer Co.* v. *Domenech, Tes.*, 50 D.P.R. 405; *Mayagüez Light, Power & Ice Co.* v. *Tribunal de Contribuciones*, 65 D.P.R. 30, 32. *Cf. R. Santaella & Hnos. Inc.* v. *Tribunal de Contribuciones*, ante, pág. 867.

*La decisión del Tribunal de Contribuciones será confirmada.*

(11) Notamos que en el caso de *The Coca Cola Export Sales Co.*, no examinamos la cuestión de si una reclamación de reintegro de un pago en exceso cae bajo la sección 64 o la 75. Discutimos la cuestión como si tal reclamación pudiera radicarse bajo cualquiera de las dos secciones y resolvimos que una reclamación bajo la sección 75 podía llevarse actualmente a las cortes así como ante el Tesorero, aun cuando el pago de la contribución hubiera sido voluntario. Somos de opinión todavía que el llegar a las cortes está permitido en tales casos bajo la actual ley. Pero ahora que la cuestión ha surgido, hacemos constar claramente que una reclamación por exceso en el pago como la de este caso y la de *The Coca Cola Export Sales Co.* surge bien bajo la sección 64 exclusivamente o por lo menos bajo las dos secciones, 64 y 75, y que el término prescriptivo provisto en la sección 64 se aplica a dicha reclamación.