## UNITED STATES v. HEILBRONER.

District Court, S. D. New York.

Feb. 15, 1938.

La'mar Hardy, U. S. Atty., of New York City (Richard Delafield, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Maass & Davidson, of New York City (Herbert Maass, of New York City, of counsel), for defendant.

MANDELBAUM, District Judge.

This is an action to recover the sum of $4,548.38. The theory of the action is that the Commissioner of Internal Revenue erroneously refunded the aforesaid sum to the defendant on account of her 1931 income tax liability.

The pertinent facts, about which there appears to be no dispute, are as follows: In 1931 the defendant received the sum of $19,109 as income from seven policies of insurance on the life of her deceased husband, Louis Heilbroner. Four of the said policies were issued by the Northwestern Mutual Life Insurance Company; two were issued by the Mutual Benefit Life Insurance Company; and one was issued by the Massachusetts Mutual Life Insurance Company. The sum of $19,109 received by the defendant was paid pursuant to certain option clauses of the aforesaid policies (all more or less similar). The agreements contained in the policies between the deceased and the insurance companies were, substantially, that the insurance companies should retain the face amount of the policies during the lives of certain designated beneficiaries and should pay interest thereon. It is further therein provided that eventually, the principal amounts of the policies were to be paid over to certain designated persons after the death of the life beneficiaries. The defendant is one of these beneficiaries.

On March 15, 1932, the defendant filed her income tax return for the calendar year 1931. She included in this return the $19,109 *as part of her gross income, and paid tax thereon.*

On or about January 27, 1933, after the payment of the said tax, the Commissioner of Internal Revenue promulgated a ruling, applicable to insurance policies containing provisions similar to the ones at bar, that "an amount received annually by a beneficiary under certain types of policies of insurance, where the determina-

tion as to the method of settlement had been made by the insured and without act of the beneficiary, and without any power on the part of the beneficiary to make any change, constituted part of the consideration for the premium payments of the insured and went to form a part of the amounts paid by reason of the death of the insured within the meaning of the income tax sections, excluding such amounts from taxable income."

By virtue of this ruling, the defendant filed a claim for refund on or about October 9, 1933, covering the income taxes which she had paid with respect to the insurance amounts (which is now the sum in suit) and which claim was subsequently allowed by the Commissioner and paid to the defendant, with interest.

Subsequently, a redetermination was made by the Commissioner of Internal Revenue and it was decided that the moneys received from the insurance companies were properly taxable as a part of gross income, pursuant to section 22(b) (1) of the Revenue Act of 1928, 45 Stat. 797, 26 U.S.C.A. § 22 note, because the amount was held by the insurer under an agreement to pay interest thereon. Apparently the basis of this new ruling was a decision of the Board of Tax Appeals in Kinnear v. Commissioner, 1930, 20 B. T.A. 718. It is to be noted that this decision was in existence at the time of the original departmental ruling excluding the moneys in question from taxation.

The necessary demand for the money, as a condition precedent to the institution of this action, was made, but such demand was never complied with.

### The Defenses.

The defendant resists this suit by the interposition of two defenses, any one of which she says is sufficient to bar recovery. The first defense which may be said to go to the merits of the controversy is that the amounts collected by the defendant from the insurance companies *do not constitute taxable income.* The second defense, technical in nature, alleges that the refund was made by the Collector of Internal Revenue with the fullest knowledge on his part of the provisions of the policies, and the basis for the payment by the insurance companies to the defendant; that there was no fraud and no misrepresentation practiced upon the Commissioner; and that there was no mistake on his part which would render this refund er-

roneous and form the foundation of this action to recover it back again. The court will consider these defenses in inverse order.

The Government has brought this action pursuant to section 610 (b) of the Revenue Act of 1928, 45 Stat. 875, as amended by section 502 (b) of the Revenue Act of 1934, 26 U.S.C.A. § 1646(b), which provides as follows:

*"Sec. 610. Recovery of Amounts Erroneously Refunded. \* \* \**

"(b) Any portion of an internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) *which has been erroneously refunded* (if such refund would not be considered as erroneous under section 608) *may be recovered by suit brought in the name of the United States,* but only if such suit is begun before the expiration of two years after the making of such refund or before May 1, 1928, whichever date is later."

(Emphasis by the court.)

The defendant received a Treasury check of $4,548.38 (including interest) as a refund on or about March 15, 1934. This action having been brought within two years thereafter is timely if the money received by the defendant was *erroneously refunded* by the Commissioner of Internal Revenue.

It is the Government's position that not only by reason of the above-quoted statute may this action be maintained, but that case law, too, irrespective of statute, has determined that a sum of money paid over by an officer of the Government under mistake of law is an illegal payment and therefore as such may be recovered. Wisconsin Central Railroad v. United States, 164 U.S. 190, 17 S.Ct. 45, 41 L.Ed. 399. Granzow v. Village of Lyons, Ill., 7 Cir., 89 F.2d 83. Further, that taxes erroneously refunded may be recovered by the United States as money paid out by its agents without legal authority, United States Paper Exports Association v. Bowers, 2 Cir., 80 F.2d 82; Woolner Distilling Co. v. United States, 7 Cir., 62 F.2d 228; Talcott v. United States, 9 Cir., 23 F.2d 897, certiorari denied 277 U.S. 604, 48 S.Ct. 601, 72 L.Ed. 1011; Lindley v. United States, 9 Cir., 57 F.2d 336; United States v. Pusey, 9 Cir., 47 F.2d 22; Champ Spring Company v. United States, 8 Cir., 47 F. 2d 1.

Defendant, while conceding that the Government is not bound by errors or mis-

takes of law made by its officers and representatives and cannot be prejudiced thereby, maintains that this maxim should not prevail in the present case because all that is involved is a change in administrative interpretation or policy upon the accession to office of a new incumbent. She urges most strongly that the Commissioner's act in allowing a refund or credit claim is quasi-judicial and that this conclusion is conclusive unless impeached for fraud or mistake of fact.

The defendant claims support for this doctrine in the cases of United States v. Detroit Steel Products Company, D.C., 20 F.2d 675, and Sterling Spring Co. v. Routzahn, 15 A.F.T.R. 556 (no official report), United States District Court, Northern District of Ohio, Eastern Division, May 4, 1929. A cursory examination of these cases tends to support the defendant's contention. However, a closer reading reveals that the questions there determined by the Commissioner were ones of *fact* rather than law. There is no expression to be found in any of those cases as to the power of the Commissioner to correct or reverse an erroneous construction of a statute made by a predecessor in office. See Sweets Co. v. Commissioner, 2 Cir., 40 F.2d 436. At bar, we are dealing with a mistake of law in the interpretation of a statute, which mistake, it is urged, was corrected by a new ruling of a new commissioner.

In Wisconsin Central Railroad Co. v. United States, supra, the Supreme Court said, at page 210 of 164 U.S. 17 S.Ct. 45, 51, 41 L.Ed. 399: "As a general rule, and on grounds of public policy, the government cannot be bound by the action of its officers, who must be held to the performance of their duties within the strict limits of their legal authority, where, by misconstruction of the law under which they have assumed to act, unauthorized payments are made."

With this general statement of the law in mind, let us examine a case more factually in line within the one presently before the court. Thus, in United States v. Tuthill Spring Co., D.C., 55 F.2d 415, 416, the court, in sustaining an action by the Government to recover excise taxes claimed to have been erroneously refunded, said: "Where the erroneous refund was made under a mistaken view of the applicable taxing statute by the administrative officers, the United States may recover by suit the taxes so erroneously refunded, or may reopen the case and redetermine the tax. The court believes that under the repeated decisions of the courts the above principles are well settled and, as above stated, are applicable to this case. Burnet v. Porter, 283 U.S. 230, 51 S.Ct. 416, 75 L.Ed. 996 [other cases cited]." To the same effect: Champ Spring Co. v. United States, 8 Cir., 47 F.2d 1, certiorari denied 283 U.S. 852, 51 S.Ct. 560, 75 L.Ed. 1459; United States v. Standard Spring Mfg. Co., D.C., 23 F.2d 495.

From the foregoing, I am persuaded that money refunded to a taxpayer may be recovered by the government when the basis of the refund, as in this case, was an erroneous conclusion in the construction or application of a statute. I fail to perceive any elements of an equitable estoppel that could prevent the government from maintaining this suit. The second defense is accordingly dismissed.

The first defense, as stated at the outset, alleges that the amounts collected by the defendant from the insurance companies did not constitute taxable income. The Government says that such amounts are taxable as gross income. The answer depends upon the construction to be placed on section 22(b) (1) of the Revenue Act of 1928, 45 Stat. 797, 26 U.S.C.A. § 22 note. This section reads as follows:

"Section 22. Gross Income. * * *

"(b) Exclusions from gross income.

"The following items shall not be included in gross income and shall be exempt from taxation under this title:

"(1) Life insurance. Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or in installments *(but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income)*."

(Emphasis by the court.)

■ Option A, contained in all the policies of insurance, with three exceptions, contains the following provision, which reads in part: "To have the * * * net proceeds of this policy at the death of the insured retained by the company until the death of the last surviving Beneficiary, the Company in the meantime to pay interest thereon annually at the rate of three percent of the amount so retained * * *."
(Emphasis by the court.)

The three exceptions contain provisions that are substantially the same as this. Instead of saying, "to pay interest thereon annually," those three policies say, *"to pay an annuity equal to three percent* of the amount so retained."

I believe that the difference in language in the above provisions does not change the legal effect thereof. The agreements between the insured and the insurer contemplate the payment to the beneficiaries, a sum of money on the proceeds or capital amount of the policies without reference to the income actually earned by that sum in the hands of the company and without impairment of the amount which will eventually, by the terms of the policy, be paid at the death of the last beneficiary or contingent beneficiary. In other words, the insurers have contracted to pay an invariable sum equal to 3 per cent. to the beneficiaries without impairment of the capital amount left with them by the insured.

■ "Interest" as generally understood means the amount which one has contracted to pay for the use of borrowed money. It was so held in Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, at page 561, 52 S.Ct. 211, 214, 76 L.Ed. 484, where the United States Supreme Court said in addition thereto: "We cannot believe that Congress used the word having in mind any concept other than the usual, ordinary, and everyday meaning of the term."

■ Here, in effect, the insured and the insurer agreed for a consideration (premium payments) that the latter pay to the beneficiary a yearly bonus for the use by the company of the principal sum of the policy which it could invest at a rate of interest above the sum contracted to pay to the beneficiary. Clearly, the insurance company is paying a price for the use of borrowed money until the happening of certain contingencies whereupon the principal sum will have to be paid to the ultimate beneficiary. I deem these payments to be "interest" as understood in its usual and ordinary everyday use. A different situation might present itself if these yearly payments represented a part of the principal amount of the policy, together with the income thereon. Then, we might have an "annuity" as understood in the strict legal sense, but at bar, the terms "interest" and "annuity" as used in the policies are interchangeable and have the same connotation. See Dodge v.

Board of Education, 302 U.S. 74, 81, 58 S.Ct. 98, 82 L.Ed. ——.

At this point, a consideration of the case of Kinnear v. Commissioner, 20 B.T. A. 718, heretofore alluded to by me as the basis for the new ruling by the Commissioner, is necessary. It supports the position of the Government in every respect. There, suit was brought by the petitioner under section 213(b) (1) of the Revenue Act of 1926, 44 Stat. 23 (the section upon which the suit at bar is predicated is a re-enactment of the aforesaid section), contending that the yearly payments by the insurance company were exempt from inclusion in gross income. In dismissing the suit, the court said, at pages 720, 721 of 20 B.T.A.: "We conclude that it was clearly the intent of Congress to include in gross income of the taxpayer earnings received during the taxable year from a life insurance policy, where the amount payable under such life insurance policy has been placed in trust by the insured under an agreement that the earnings thereon shall be paid to the beneficiary."

Even if the court were loath to accept this decision and give judicial approval to the reasoning therein contained, the Government has submitted two cases decided by our highest tribunal which, to my mind, establish the soundness of the Kinnear Case, supra. They are Irwin v. Gavit, 268 U.S. 161, 45 S.Ct. 475, 69 L.Ed. 897, and Burnet v. Whitehouse, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534, which deal with income tax statutes which provide, in substance, that the value of property acquired by a "gift, bequest, devise or inheritance" shall not be included in the computation of gross income, but the income from such property shall be so included.

In Irwin v. Gavit, Judge Holmes, in holding the sums paid to the plaintiff to be taxable income, said, at page 167 of 268 U.S., 45 S.Ct. 475, 476, 69 L.Ed. 897: "The language quoted leaves no doubt in our minds that if a fund were given to trustees for A for life with remainder over, the income received by the trustees and paid over to A would be income of A under the statute. *It seems to us hardly less clear that even if there were a specific provision that A should have no interest in the corpus, the payments would be income none the less, within the meaning of the statute and the Constitution, and by popular speech.* In the first case it is true that the

372

bequest might be said to be of the corpus for life, in the second it might be said to be of the income. But we think that the provision of the act that exempts bequests assumes the gift of a corpus and contrasts it with the income arising from it, but was not intended to exempt income properly so-called simply because of a severance between it and the principal fund." (Emphasis by the court.)

In Burnet v. Whitehouse, a later case, the Supreme Court, in holding a particular bequest nontaxable, and specifically distinguishing it from Irwin v. Gavit, said at page 151 of 283 U.S., 51 S.Ct. 374, 375, 75 L.Ed. 916, 73 A.L.R. 1534:

"As held below, the bequest to Mrs. Whitehouse was not one to be paid from income, but of a sum certain, payable at all events during each year so long as she should live. It would be an anomaly to tax the receipts for one year and exempt them for another simply because executors paid the first from income received and the second out of the corpus. The will directed payment without reference to the existence or absence of income.

"Irwin v. Gavit is not applicable. The bequest to Gavit was to be paid out of income from a definite fund. If that yielded nothing, he got nothing. This court concluded that the gift was of money to be derived from income and to be paid and received as income by the donee. Here the gift did not depend upon income, but was a charge upon the whole estate during the life of the legatee to be satisfied like any ordinary bequest." (Emphasis by the court.)

Paraphrasing the decisions in both the aforesaid cases, it may be said that if a sum is, of necessity, by the terms of the "gift, bequest, devise or inheritance" payable to the beneficiary solely from the income of the "gift, bequest, devise or inheritance" and without impairment of the capital or beneficial amount or corpus of the "gift, bequest, devise or inheritance," then such sum as is paid shall be included in the computation of gross income of the beneficiary. If not, then such sum is exempt from taxation.

While the taxing statutes involved in those cases and the one in the present care are dissimilar, the reasoning employed can be applied with equal force where, as here, a beneficiary has received a life estate in the principal amount of the policy, pursuant to a trust agreement, from which she is to receive a fixed and invariable sum each year without diminution of the corpus or principal amount of the policy.

It is argued on behalf of the defendant that an agreement by an insurer to withhold the principal amount of the policy and to pay interest thereon means an agreement between the beneficiary and the insurer and does not contemplate an agreement made between the insured and the insurer. So that, if upon the death of the insured the principal amount of the policy passed to the beneficiary who thereafter contracted with the insurer to turn over the principal sum and receive interest thereon for a stipulated period, such interest payments would be subject to taxation as being gross income.

I feel that I cannot agree with this position. To my mind, there is nothing ambiguous or doubtful in the statute itself, which, if such ambiguity or doubt existed, would inure to the benefit of the taxpayer. The statute is clearly broad enough to cover an agreement made by anyone, and I fail to find any cogent reason why there should be a distinction between an agreement made between the insured and insurer and one between the insurer and beneficiary. More so, this very argument was urged in Kinnear v. Commissioner, supra, and completely rejected by the court. I therefore dispose of this argument by quoting the language of Judge Holmes in Irwin v. Gavit, supra, where he said, at page 168 of 268 U.S., 45 S.Ct. 475, 476, 69 L.Ed. 897: "It is said that the tax laws should be construed favorably for the taxpayers. But that is not a reason for creating a doubt or for exaggerating one when it is no greater than we can bring ourselves to feel in this case."

After submission of the entire case by both sides, the court's attention was directed by defendant's counsel to the case of Penn Mutual Life Insurance v. Commissioner, 3 Cir., 92 F.2d 962, which, they claim, is decisive of all the issues presented at bar. Additional briefs were submitted and further oral argument was heard by the court. It is true that the conclusions reached by the court in the Penn Case are not to be easily brushed aside. But, after carefully reading the opinion, as well as weighing the arguments advanced by opposing counsel, I am of the belief that the case is distinguishable from the one presently before the court, not only in that the

policy provisions in both cases are essentially different, but that in principle the Penn Case is akin to Burnet v. Whitehouse, supra, rather than Irwin v. Gavit, supra, and hence inapplicable. I am constrained therefore to also dismiss the first defense.

In accordance with the stipulation of counsel empowering the court to direct a verdict for either side, I hereby direct a verdict in favor of the plaintiff against the defendant for the sum of $4,525.19 with interest as demanded in the complaint.