Frances E. LATENDRESSE, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 11902.

United States Court of Appeals
Seventh Circuit.

April 30, 1957.

Rehearing Denied May 25, 1957.

C. Severin Buschmann, Jr., Indian-apolis, Ind., William H. Krieg, Indian-apolis, Ind., Buschmann, Krieg, DeVault & Alexander, Indianapolis, Ind., of counsel, for petitioner.

Charles K. Rice, Asst. Atty. Gen., Walter Akerman, Jr., Attorney, U. S. Dept. of Justice, Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Louise Foster, Attorneys, Department of Justice, Washington D. C., for respondent.

Before DUFFY, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Chief Judge.

The Commissioner determined deficiencies in income tax against the taxpayer claiming she had failed to include

in her gross income for the years 1946 to 1949, inclusive, renewal commissions which were paid to her in those years by the Standard Life Insurance Company of Indiana. The Tax Court approved the Commissioner's determination except it allowed certain deductions for amortization.

The principal question here for decision is whether insurance renewal commissions received by the taxpayer in the years 1946 through 1949 should be included in her gross income for those years as income in respect of her deceased husband within the meaning of § 126(a) (1), (3) Internal Revenue Code of 1939, 26 U.S.C.A. § 126(a) (1, 3). If that question be decided in the affirmative, there arise three additional questions: 1) whether taxpayer is entitled to a deduction for amortization of the costs of certain contracts; 2) whether the portion of commissions retained by the Insurance Company against advances for expenses are to be included in taxpayer's gross income for 1946, and 3) whether the collection of deficiencies for the years 1946 and 1947 are barred by limitations under § 275(c), Internal Revenue Code of 1939, 26 U.S.C.A. § 275(c).

Taxpayer is the widow and sole beneficiary under the will of Frank J. Latendresse who died July 3, 1944. Until 1941 when decedent moved to Indianapolis, he lived in Marion, Indiana, where he and his wife were partners in the S & L Gravel Company. Decedent became connected with the insurance business of Standard through several contracts hereinafter described.

Standard was organized in 1934 by Arthur H. Wyatt and George F. Flagg for the purpose of carrying on a life insurance business. Wyatt was designated as Standard's General Agent for the sale of certain capital stock of the company and life insurance policies denominated "organization policies" in an aggregate amount of $15,000,000. Wyatt employed Flagg to assist him in the performance of these contracts. Under date of February 28, 1939 Wyatt entered into a contract with Frank J. Latendresse hereinafter somtimes called Frank, and the contract is hereinafter referred to as the A Agency Contract. Wyatt sold Frank the unperformed part of the former's contract with Standard. The consideration to Wyatt was $23,000 of which $3,000 was contributed by Flagg, and $3,860.34 was assigned as the purchase price of the tangible assets. This sale did not include the deferred or contingent renewal commissions on insurance and stock already sold. Frank was substituted for Wyatt as the general agent of Standard to sell the remainder of the $15,000,000 of life insurance.

On April 22, 1940, Frank and Wyatt made another contract which is referred to as the A Agency Renewal Contract. The Tax Court found that under this contract Frank purchased from Wyatt for a total consideration of $12,500 the latter's interest in the contingent renewal commissions retained by Wyatt in 1939 in excess of the amounts necessary to satisfy the several obligations for which these contingent sums had been impressed with a trust pursuant to the A Agency Contract.

On April 19, 1939 Standard entered into a contract with Frank's brother, James. This contract is referred to as the B Agency Contract. Under this contract James was appointed general agent for the sale of additional capital stock and of certain insurance policies denominated "Special Coupon Policies," to begin upon the completion of the then existing contract between Standard and Frank. This agreement was amended on May 31, 1939 to provide for the substitution of Frank as general agent in the event of the death of James. Frank agreed to advance up to $30,000 for the purpose of financing the sale of the new policies, in consideration of which he was to receive 24% of the net proceeds of such business in addition to repayment of the amounts advanced. Flagg was employed to assist in the sale of these policies for which he was to receive 32% of the net proceeds of the business, and was named as successor to the general agency upon the death of both James and

Frank. James died on May 11, 1940 and Frank was then substituted as general agent. On December 31, 1941 Flagg sold his interest in the B Agency Contract to Frank for $7,400.43. Frank was the sole owner of that contract at the time of his death and no portion of the commissions belonged either to Flagg or to the estate of James.

On May 29, 1941 Frank entered into a new contract with Standard which is referred to as the C Agency Contract. Under this contract Frank was to act as its general agent in the sale of certain life insurance policies known as "Profit-sharing Participating Thirty-Payment Life" policies. He was to receive as consideration for the sale of the insurance policies 85% of the first year's premiums, 12½% of the premiums for the next five years, 7½% of the premiums for the next four years, and 5% of the premiums for the next five years plus certain bonuses payable out of the first annual premiums. Each party was to advance funds equal to those furnished by the other up to $20,000 to finance the operation of the general agency during the first year.

Standard had advanced $10,235 up to the date of Frank's death. That amount was carried as a liability of the general agency and was so treated on the estate tax return of Frank. Standard credited $7,441.77 during the year 1946 upon renewal commissions due taxpayer in repayment of its advances.

Frank entered into an agreement with John M. Brown on May 20, 1941 whereby Brown was employed for the purpose of assisting in the carrying out of the C Agency Contract. Brown was to receive 50% of the net profits as compensation. The agreement further provided for the succession by Brown to the general agency upon the death of Frank. Brown was to pay Frank's widow, the taxpayer here, 50% of the net profits less one-half of the bookkeeping and disbursement expenses for all insurance sold up to the date of succession. Brown succeeded to this general agency on July 3, 1944.

The duties of Frank as general agent for the C Agency were "The General Agent shall procure agents to enter into contracts with the Company, shall solicit applications for insurance and annuities with the Company either personally or through agents procured by him, shall collect in exchange for official receipts furnished by the Company, and remit immediately to the Company, first-year and renewal premiums on business written by or through his agency or transferred to it by the Company with his consent."

Each of the agency contracts provided that upon the happening of certain events (which were not susceptible of ascertainment) the contract could be canceled and Standard could revoke the privilege therein granted.

One hundred agents formerly employed by Wyatt and Flagg were turned over to Frank when he entered the insurance business. All agents engaged in selling the life insurance policies were to be employed by and under the exclusive supervision of Frank.

The Tax Court found that Frank was serving as general agent for Standard at the time of his death, and had the right to receive renewal insurance commissions earned but not then due and payable for insurance written by him subsequent to February 28, 1939 under the A, B and C Agency Contracts. He also had the right to receive certain renewal commissions (in excess of certain obligations) on insurance written prior to February 28, 1939 by Wyatt pursuant to the July 19, 1934 contract. The Tax Court held that such commissions not being includable in the taxable period in which fell the decedent's death, should be treated as ordinary income when received in later years by the taxpayer and that she should be taxed thereon under § 126(a) of the Code of 1939.

Like the Tax Court, we have some difficulty in understanding taxpayer's position. She says the commissions paid to her were attributable to a "continuing capital investment"; that the insurance

agency of Frank J. Latendresse was a purchased capital asset which was sold subsequent to his death to John M. Brown, and the sale need not be accounted for under § 126, Internal Revenue Code, 1939. Taxpayer's position seems to be that the amounts she received were paid as consideration for the sale of a capital asset which she inherited from her husband, and that such amounts are not taxable because she has not yet received the amount of the basis allowed her under § 113(a) (5), Internal Revenue Code 1939, 26 U.S.C.A. § 113 (a) (5), which provides: "If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition."

■ We think the decision of the Tax Court was correct. What the taxpayer received was the right to income, i. e., renewal commissions which her deceased husband had earned while acting as agent for Standard but which were not due and payable at the time of his death. It follows these commissions are income with respect of a decedent under § 126, and that section, in subparagraph (a) (3) requires that we treat such income in the hands of the taxpayer who acquired it both by inheritance and designation in the contract of May 20, 1941, as if it had been acquired by her in the transaction by which the decedent acquired such rights.

■ We now reach the three additional issues hereinbefore stated. The first concerns advances which were made by Standard to the Agency and which were paid in 1946 when Standard retained a sufficient amount of renewal commissions then due to taxpayer in order to pay off its advances. This action by Standard was taken pursuant to a provision in the C Agency Contract. At the date of Frank's death, there still were unpaid advances made by Standard. The amount owing in 1946 was $7,441.-77 and in order to secure repayment, Standard retained that amount from the renewal commissions then due to tax-

payer. We think the Tax Court was correct in agreeing with the Commissioner's determination that the amount of commissions retained by Standard was part of taxpayer's gross income for 1946. Inasmuch as taxpayer's husband agreed that advances made by Standard to his business could be paid out of renewal commissions payable to him, and as such commissions were used to pay off the advances, the commissions must be treated as income in respect of the decedent and taxable to the taxpayer who received her rights to the commissions from her husband.

■ The next issue is whether the Tax Court correctly determined and computed the amount of deductible amortization. This requires consideration only of the contracts under which Frank purchased his right to be general agent or purchased rights to renewal commissions. Each of said contracts appears to have yielded income in the years following Frank's death. The Tax Court held the costs of such contracts can properly be recovered out of income when such income is to be paid for limited periods which are ascertainable. The Tax Court stated the taxpayer failed to establish facts which would permit the computation of a mathematically accurate allowance for each of the tax years. However, the Tax Court thought it would be unfair to disallow amortization entirely, and under the authority of such cases as Pleason v. Commissioner, 7 Cir., 226 F.2d 732, and Bodoglau v. Commissioner, 7 Cir., 230 F.2d 336, the Court made its own computation fixing the amount allowable for the four years at $8,500.00. Taxpayer now claims she should have been allowed $10,216.25. We approve of the computation and the allowance made by the Tax Court.

The last issue is whether the five year or the three year statute of limitations is applicable. Taxpayer entered into an agreement with the Commissioner on June 15, 1951 whereby the period for assessing taxes due for 1946 and 1947 was extended to June 30, 1952. The statutory notice of deficiency was mailed

November 30, 1951. But taxpayer claims the correct period was three years from the date of filing the returns, and that such period had already expired before the agreement was made with the Commissioner. The Tax Court disagreed and held the facts here bring this case within § 275(c), Internal Revenue Code of 1939.

Section 275(c) provides that if a taxpayer omits from gross income an amount properly includible which is in excess of 25 per centum, the tax may be assessed at any time within five years after the return is filed. Taxpayer reported $8,473.70 and $10,138.81 for the years 1946 and 1947 respectively, and omitted renewal commissions in the amount of $24,581.38 and $17,887.38 respectively. The commissions omitted were more than 25 percent of the gross income reported. We agree with the Tax Court that the five-year statute was applicable.

Judgment affirmed.