**UNITED STATES of America,**
**Plaintiff,**

v.

**Catherine H. ELLIS, Defendant.**

United States District Court
S. D. New York.
Aug. 13, 1957.

Paul W. Williams, U. S. Atty. for Southern Dist. of New York, New York City, for plaintiff. Arthur B. Kramer, Asst. U. S. Atty., New York City, of counsel.

Maclay, Morgan & Williams, New York City, for defendant. Choate, Hall and Stewart, Boston, Mass., Charles Dickerman Williams, New York City, Richard Wait, Jesse R. Fillman, Boston, Mass., of counsel.

LEVET, District Judge.

This action is brought pursuant to Section 3746(b) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 3746(b). The United States is seeking to recover $25,155.09 and interest upon the ground that this sum was erroneously refunded to the defendant.

Practically all of the facts were stipulated by the parties.

The action was tried before this court without a jury. After hearing the testimony, examining the exhibits, briefs and pleadings of the parties, I hereby find as follows:

**Findings of Fact**

1. The defendant is the widow of Alexander Ellis, who died a resident of the Commonwealth of Massachusetts on November 5, 1943.

2. Defendant at the time of service of process herein resided within the Southern District of New York.

3. At the time of his death, the said Alexandar Ellis was a member of the partnership of Fairfield & Ellis, which was engaged in the business of insurance brokerage in Boston, Massachusetts, under certain Articles of Partnership, which were introduced in evidence.

4. Prior to his death in 1943, Alexander Ellis had been continuously engaged in the insurance brokerage business as a licensed broker in Boston, Massachusetts, for more than 20 years; from 1926 to 1930, in the partnership of Russell & Fairfield, and subsequently from 1930 to July 1, 1937, a member of the successor partnership of Russell, Fairfield & Ellis.

5. At some time prior to 1942, Herbert Fairfield, a member of the said partnership, had loaned $6,000 and the decedent, Alexander Ellis, had loaned $3,000 in original capital to one of the partnerships; no other capital was invested or loaned. The capital was not a substantial income-producing factor for the firm of Fairfield & Ellis or its predecessors.

6. For the period between January 1, 1936 and July 1, 1937, Herbert Fairfield received 53% and Alexander Ellis 47% of the net partnership income of Russell, Fairfield & Ellis after payments to the junior or salaried partners. The net income of Russell, Fairfield & Ellis and Alexander Ellis' share of that income for this period was as follows:

| | Net Income | Distributable Share of Alexander Ellis |
|---|---|---|
| Jan. 1, 1936–June 30, 1936 | $ 92,220.25 | $ 37,197.98 |
| July 1, 1936–Jan. 31, 1937 | 104,505.88 | 36,866.32 |
| Jan. 31, 1937–June 30, 1937 | 87,395.98 | 30,118.08 |

7. The first fiscal year of Fairfield & Ellis ran from July 1, 1937 to January 31, 1938. Thereafter the partnership reported its income on the basis of a fiscal year which began on February 1 and ended on January 31 of the following calendar year. The defendant reported her income on a calendar year basis.

8. Substantially all income earned by the firm after July 1, 1937 was derived

from commissions earned on the sale of insurance as agent for various insurance companies and as brokers. The partnership profits for the fiscal year July 1, 1937 to January 31, 1938 were $106,724.38, all of which was derived from commissions earned on the sale of insurance. Alexander Ellis' distributable share of this income was $24,350.64. Thereafter the profits and Alexander Ellis' distributable share to the date of his death were as follows:

| Year Ending 1/31 | Net Commission Income | Alexander Ellis Distributable Share | Capital Gain |
|---|---|---|---|
| 1939 | $195,488.32 | $36,458.53 | |
| 1940 | 175,529.12 | 32,960.19 | |
| 1941 | 203,713.68 | 54,087.98 | |
| 1942 | 188,130.70 | 54,151.61 | $ 1,825.00 |
| 1943 | 217,025.28 | 59,695.99 | |
| 1944 | 262,247.36 | 54,606.10[11/30/43] | |
| 1945 | 263,135.19 | | 66.66 |
| 1946 | 219,285.61 | | 30,000.00 |

9. Prior to the death of Alexander Ellis, the major portion of the commission income of Fairfield & Ellis and the predecessor partnership of Russell, Fairfield & Ellis was derived from the sale of fire, casualty, liability and marine insurance which was written for three and five-year periods. The commission which the firm received was a percentage of the total premium on any policy written for one of its customers. Generally speaking, the firm was paid a smaller percentage on the renewal of an outstanding policy than it was for the placement of a policy for a new insured, but, for the years before and after Alexander Ellis' death, a substantial part of the firm's income came from commissions on renewal business.

10. The firm of Fairfield & Ellis and the predecessor firm of Russell, Fairfield & Ellis maintained an extensive organization numbering at least 40 employees and including experts and specialists in insurance matters, which was devoted to servicing its customers. Among the services which the firm provided through its experts and specialists were these: it would give advice as to the kind and amount of insurance which would best meet its customer's need and what insurance company could best meet the need; it would keep abreast of recent developments in the insurance field, would suggest to its customers how premiums might be trimmed in light of these developments, and would otherwise suggest the modification of outstanding or expiring policies in the light of changed conditions; and it would process claims of loss for its customers and prepare new policies when old ones expired.

11. Prior to his death, Alexander Ellis by virtue of his own personal efforts in the sale of insurance was directly or indirectly responsible for a substantial portion of the total commission income earned by Fairfield & Ellis and the predecessor firm of Russell, Fairfield & Ellis.

12. In November, 1936, Alexander Ellis nominated one John H. Good as a dormant partner, pursuant to Section 18 of the said Articles of Partnership as amended, and the said John H. Good accepted the said nomination and it was agreed that the said John H. Good should receive certain amounts payable from the partnership of Fairfield & Ellis as trustee for Catherine H. Ellis, wife and later widow of Alexander Ellis, to be paid over to her absolutely. On March 31, 1944, the said John H. Good signed an Agreement of Trust, whereby he agreed to hold in trust any funds he received as said dormant partner in the firm of Fairfield & Ellis for the late Alexander Ellis and to pay them currently to Catherine H. Ellis during her life, and in the event of her.

death to pay them to such persons and in such shares as she will appoint by will. (See affidavit of John H. Good, Exhibit E, and Paragraph 11 of stipulation, Government's Exhibit 6.)

13. The firm of Fairfield & Ellis accepted the nomination of John H. Good as the dormant partner representing the interest of Alexander Ellis. In accordance with the partnership agreement John H. Good as dormant partner became entitled to receive for a period of ten years after the death of Alexander Ellis one-half of the share of the profits of the partnership that Alexander Ellis was receiving at the time of his death and to bear the burden of one-half of the share of any losses which Alexander Ellis was obliged to share at the time of his death, with the condition that John H. Good as dormant partner was entitled to receive not less than $25,000 out of the firm's profits for each year or such smaller sum as the profits should amount to so long as Herbert Fairfield continued as an active partner of the firm. Mr. Fairfield did so continue.

14. As of the date of Ellis' death the balance sheet of Fairfield & Ellis contained no entry on account of firm name or good will.

15. At the date of his death Alexander Ellis' account with Fairfield & Ellis showed an overdraft as of November 30, 1943 after appropriate adjustments, including a credit for the $3,000 which Ellis had loaned to the business as aforesaid and after a credit for Mr. Ellis' share of the capital assets of the firm. This overdraft amounted to $15,811.42. It was paid in 1944 by deducting $15,811.42 from the amounts payable to the dormant partner for the benefit of the defendant under the Articles of Partnership as amended.

16. The executrix of the estate of Alexander Ellis did not include in her federal estate tax return the right which his widow had acquired through the medium of Mr. Good as dormant partner appointed under Section 18 of said Articles of Partnership as amended. Upon audit of the return, the Commissioner of Internal Revenue included said right in the gross estate and valued it at $221,261.54. This change, together with other minor adjustments, produced a deficiency in estate tax of $58,044.47, of which $57,034.44 was attributable to the inclusion of the right under the partnership agreement; this estate tax deficiency together with interest of $6,292.55 attributable to that portion of the deficiency resulting from the inclusion of the right was paid on April 8, 1947.

17. The share of the firm profits which were distributable to the dormant partner for Alexander Ellis for the years 1944–1946 as determined upon the partnership income tax returns for those years, each after audit, was as follows:

| | |
|---|---|
| 1944 | $12,724.08 |
| 1945 | 35,216.56 |
| 1946 | 32,639.81 |

The above 1944 figure represents the distributable share for the two-month period beginning December 1, 1943 and ending January 31, 1944; the 1945 and 1946 figures represent the distributable shares for the twelve-month period beginning February 1 and ending the ensuing January 31. During the entire period the partnership was solvent and financially able to make payment of the dormant partner's distributable share.

18. In the partnership information returns filed by the firm of Fairfield & Ellis for the years 1944–1946 inclusive, the portion of the firm profits distributable to the dormant partner for Alexander Ellis was deducted from the net profits of the firm in determining the profits distributable to the other partners. In other words, the dormant partner was treated as a partner in determining the profits of the partnership to be taxed to each of the members of the firm; the surviving partners of Fairfield & Ellis did not pay income tax on the distributable share of the firm income payable to Ellis' dormant partner under Section 18, as amended, of the partnership agreement for the years 1944 to 1946 inclusive.

19. Defendant duly filed her income tax returns for the calendar years 1944,

1945, and 1946. She included in her returns the respective amounts shown on the partnership returns, as originally filed, as distributable to the dormant partner. She paid a total tax for each of those years as follows:

| | Total Tax Paid |
| --- | --- |
| 1944 | $ 1,139.70 |
| 1945 | 16,282.97 |
| 1946 | 8,404.07 |

20. In 1948, defendant filed with the appropriate Internal Revenue authorities claims for refund for all of the income taxes which she had paid for the years 1944, 1945, and 1946. These claims were allowed in part upon the theory that Mrs. Ellis should be allowed to deduct from the income which she had reported for each of the years 1944, 1945 and 1946, one-tenth of the valuation of $221,261.54 assigned for estate tax purposes to the right which accrued upon Mr. Ellis' death to his dormant partner under and pursuant to Section 18 of the partnership agreement as amended. The pertinent facts with respect to the refunds made to Mrs. Ellis are as follows:

| Taxable Year | Date of Payment | Tax Refunded | Interest Refunded | Total |
| --- | --- | --- | --- | --- |
| 1944 | December 5, 1950 | $ 919.43 | $ 178.18 | $ 1,097.61 |
| 1945 | June 6, 1950 | 12,863.53 | 3,214.00 | 16,077.53 |
| 1946 | June 6, 1950 | 6,702.14 | 1,277.81 | 7,979.95 |

21. This suit was commenced pursuant to the provisions of Title 26 United States Code, § 3746 (1939 Internal Revenue Code) by the filing of a summons and complaint on June 6, 1952.

22. The suit was commenced upon the direction of the Attorney General of the United States upon the request and authorization of the Commissioner of Internal Revenue.

23. Section 18 of the partnership agreement (see stipulation, Government's Exhibit 6; Contract, Exhibit A) provides in effect that Alexander Ellis, as one of the two senior managing partners, might designate a dormant partner who would have the option of continuing for a ten-year period following Ellis' death or withdrawal from the partnership, to receive one-half of the share of the firm's profits which Ellis would have received had he continued as a member of the firm, with the additional stipulation that Ellis' dormant partner would receive not less than $25,000 a year as long as Herbert Fairfield continued as an active member of the firm and the firm had profits of at least $25,000.

## Discussion

The government contends that the partnership profits which Mrs. Ellis originally reported as income in 1944, 1945 and 1946 are taxable to her as income "in respect of a decedent" under Section 126 of the 1939 Code. Such payments, it is argued, were made to Mrs. Ellis as the result of personal services which her husband, Alexander Ellis, had performed for the partnership during his lifetime, in substance, deferred compensation, having the same character in Mrs. Ellis' hands as they "would have had in the hands of the decedent if the decedent had lived and received such [payments]."

The government further points out that the fact that Section 126 provides that, in computing the income tax payable upon the receipt of such income, a deduction shall be allowed for the estate tax attributable to the inclusion of the right in the decedent's estate, precludes the argument that valuation for estate tax purposes thereby prevents the imposition of an income tax.

The defendant maintains: (1) That the government, having made a refund, is barred from suit to recoup the refund; (2) that the refunds on a straight line basis limited to the total of the estate tax valuation were not erroneous since the right to receive income was a proprietary right under such valuation; (3) that

even if Section 126 applied, there can be no recovery since it is alleged that this section applies to cash receipts only and not to items of gross income, such as partnership or fiduciary income, and that there was no proof of how much the defendant received in any one of three years concerned.

Since both the government and the defendant agree that an income tax on the receipt of the profits is payable, the issue here involves solely the question of what deduction is applicable. The government states that deduction should be, and is, controlled by Section 126, subdivision (c) (1). The defendant insists that the previous allowance of a straight line deduction allegedly pursuant to Sections 23(*l*) and 113(a) (5) is correct.

The pertinent parts of the statutes involved are set forth in the margin.[1]

■ This suit is authorized by statute. Section 3746(b) of the 1939 Internal Revenue Code provides in its pertinent part as follows:

"Any portion of an internal revenue tax (or any interest, penalty, additional amount, or addition to such tax) which has been erroneously refunded * * * may be recovered by suit brought in the name of the United States, but only if

1. 1939 Internal Revenue Code, as amended, Section 126, subdivisions (a) and (c):
"§ 126. Income in respect of decedents
"(a) Inclusion in gross income.
"(1) General rule. The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:
"(A) * * *
"(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or
"(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.
"(2) * * *
"(3) Character of income determined by reference to decedent. The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction by which the decedent acquired such right; and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

"(b) * * *
"(c) Deduction for estate tax.
"(1) Allowance of deduction. A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio of the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a) (1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a) (1).
"(2) * * *"
1939 Internal Revenue Code, as amended, Section 23(*l*):
"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
* * * * *
" * * * a reasonable allowance for the exhaustion * * * (2) of property held for the production of income."
1939 Internal Revenue Code, as amended, Section 113(a) (5):
"§ 113. Adjusted basis for determining gain or loss—
"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that—
* * * * *
"(5) Property transmitted at death.
"If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. * * *"

such suit is begun before the expiration of two years after the making of such refund."

This suit was begun on June 6, 1952, within the two-year statute (26 U.S.C.A. 6532(b)). The settlement made by the defendant with the plaintiff was not consummated by means of a "closing agreement," permitted under Section 3760 of of the 1939 Code (26 U.S.C.A. Internal Revenue Code). Under such circumstances, in order to avoid unjustified depletion of the public treasury legal action to rectify such a mistake of *law* or fact, the courts, in applying the statutes, have granted recoupment to the government. Burnet v. Porter, 1939, 283 U.S. 230, 51 S.Ct. 416, 75 L.Ed. 996; Page v. Lafayette Worsted Co., 1 Cir., 1933, 66 F.2d 339; McIlhenny v. Commissioner, 3 Cir., 1930, 39 F.2d 356; United States v. Heilbroner, D.C.S.D.N.Y.1938, 22 F. Supp. 368, affirmed 2 Cir., 1938, 100 F.2d 379.

In Talcott v. United States, 9 Cir., 1925, 23 F.2d 897, certiorari denied 277 U.S. 604, 48 S.Ct. 601, 72 L.Ed. 1011, the court, after summarizing certain decisions of the Supreme Court, wrote:

" * * * They establish the principle that it is immaterial whether payments which are thus sought to be recovered were made under mistake of law or mistake of fact, that the only question is whether they were paid without legal authority or legal liability therefor, and that the repayment to a taxpayer of a sum paid for taxes is not a final determination of his right to receive the same, that the government may recover as for money had and received all payments illegally paid by a public officer, and that the decisions of executive officers in making such payments are not judicial and are not binding on a court. United States v. Burchard, 125 U.S. 176, 8 S.Ct. 832, 31 L.Ed. 662." 23 F.2d at page 901.

The fact that the Code (Section 3760 of the 1939 Code) supplied a specific procedure by which the government could conclusively bind itself precludes the contention that the law-making body intended the government to be constricted by any other method. Payson v. Commissioner, 2 Cir., 1938, 166 F.2d 1008; Knapp-Monarch Co. v. Commissioner, 8 Cir., 1944, 139 F.2d 863. Consequently, neither estoppel nor accord and satisfaction constitutes a defense. Therefore, the defenses alleged in Paragraphs Eighteenth, Nineteenth, Twentieth, Twenty-First, Twenty-Second, and Twenty-Third are dismissed on the merits and with prejudice.

Certain characteristics of the agreement under which the defendant benefitted are:

1. The payments made under the circumstances hereunder to the dormant partner (Good) for Mrs. Ellis' benefit were obviously designed to provide post-death compensation to the decedent's designee for *personal services performed by Ellis* since substantially all the income of the firm came from commissions or renewals. This is the nature of the insurance business. Estate of Remington, 9 T.C. 99.

2. Capital certainly was not a substantial income-producing factor (Government's Exhibit 6, Paragraph 5). The surviving partners recognized this factor, since they deducted the distributable share from partnership earnings payable to the dormant partner in computing their own distributive shares for tax purposes.

The criterion of taxability of income under Section 126 (26 U.S.C.A. § 126) is whether the post-death payments are in fact due to services performed by a decedent in his lifetime. Bausch's Estate v. Commissioner, 2 Cir., 1951, 186 F.2d 313; O'Daniel's Estate v. Commissioner, 2 Cir., 1949, 173 F.2d 966; Flarsheim v. United States, 8 Cir., 1946, 156 F.2d 105; Varnedoe v. Allen, 5 Cir., 1946, 158 F.2d 467, certiorari denied 1947, 330 U.S. 821, 67 S.Ct. 771, 91 L.Ed. 1272.

Income so derived, even though not accrued before death, is properly taxable

under Section 126. Latendresse v. Commissioner, 7 Cir., 1957, 243 F.2d 577; Commissioner of Internal Revenue v. Linde, 9 Cir., 1954, 213 F.2d 1, certiorari denied 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 686; O'Daniel's Estate v. Commissioner, 2 Cir., 1949, 173 F.2d 966.

The defendant contends that the right to share the partnership profits became a capital asset when, upon the death of Ellis, the valuation for federal estate tax purposes was determinéd. The defendant argues in effect that the basis of this "capital asset" was the estate valuation of the right to income and that, until such payments received exceed this basis, there is no income tax payable. Defendant claims that Section 23(*l*) and Reg. 118 § 39.23(1)–1 authorize a reasonable allowance for the exhaustion of a wasting asset based upon the *"cost or other basis* of the property determined in accordance with Section 113." Section 113(a) (5) provides:

> "(5) If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. \* \* \*"

This was the holding of the tax court in Rose J. Linde, 1951, 17 T.C. 584, but the Ninth Circuit rejected this doctrine. Commissioner of Internal Revenue v. Linde, 9 Cir., 1954, 213 F.2d 1, certiorari denied 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 686. The Court of Appeals in the Linde case, supra, said:

> "As we have previously indicated, it is our view that section 126 was but an improved method adopted by Congress in aid of its continuing effort to avoid the loss of tax upon income merely because of the death of the decedent who would have paid a tax upon the same economic returns had he lived to receive them.

> "The Internal Revenue Code as a whole manifests a general intent on the part of Congress to reach and tax all that rightly comes within the concept of income. Thus section 22 (a) defines gross income in very broad terms, sweeping up into the general provisions 'gains or profits and income derived from any source whatever.' The broad language there was an effective means to indicate the purpose to include all items that are constitutionally income. The similarly broad and inclusive reference in section 126 to 'all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period' is, we think, the result of a conscious effort to catch and tax all items of the character here involved." 213 F.2d at page 6.

■ Under Section 126(c) (1) the the defendant is entitled to receive certain deductions therein specified for her income tax purposes for the estate tax attributable to the inclusion in her husband's estate of the right to share profits of the partnership. Thus, there can be no claim of true double taxation under the estate tax and income tax. Consequently, since Section 126 is applicable, Section 113(a) (5) is not. That Congress clearly intended the two sections—Sections 126 and 113(a) (5)—to be mutually exclusive is further evident from the Report of the Senate Committee on Finance, which states in pertinent part as follows:

> "Since this section [126] provides for the treatment of such amounts as income to the persons placed in the same position as the decedent with respect to such amounts, the provisions of section 113(a) (5) with respect to the basis of property do not apply to these amounts in their hands. \* \* \*" Report of the Committee on Finance, S.Rep. No. 1631, 77th Cong.2d Sess., p. 102 (1942–2 Cum.Bull. 580).

See also Estate of Boyd C. Taylor, 17 T.C. 627, affirmed per curiam 6 Cir., 1951, 200 F.2d 561.

The case of Hatch v. Commissioner, 2 Cir., 1951, 190 F.2d 254, upon which defendant relies, in my opinion is not applicable here. The pertinence of Section 126 was not argued by the Commissioner nor considered by the court. Section 126 was enacted on October 21, 1942, and by its terms was applicable only to tax years ending after December 31, 1942. Ellis died on November 3, 1943. The issue of Section 126 was not involved in the Hatch case, supra. Moreover, the Bausch case, supra, 1951, Linde case, supra, 1954, and the Latendresse case, supra, 1957, confirm the conclusion that Mrs. Ellis received income under Section 126.

█ Mrs. Ellis' contention that there was no proof that she actually received any income in 1944, 1945 and 1946 is without foundation. The returns were marked in evidence (Government's Exhibits 1, 2 and 3). These are prima facie evidence. No proof of non-receipt of such income was offered by defendant. Consequently, the returns stand as admissions uncontradicted. The burden to prove that she did not receive such income was defendant's. Cf. Bedell v. Commissioner, 2 Cir., 1929, 30 F.2d 622; In re Epstein, D.C.E.D.Mich.1924, 300 F. 407, affirmed 6 Cir., 4 F.2d 529.

In any event, the defendant, under Section 126, is taxable upon the distributive share of the profits, whether received or not received by her. Under Good's appointment as Ellis' dormant partner, he was duty bound to turn over as received all payments from Fairfield & Ellis (Exhibit E annexed to Government's Exhibit 6). There is no evidence that he did not abide by this condition. Mrs. Ellis was, thus, for all practical purposes, the dormant partner.

Under Section 126(a) (3) Mrs. Ellis, in substance, through the agency of the dormant partner, Good, is her husband's, the decedent's successor. Cf. Ross v. Commissioner, 1 Cir., 1948, 169 F.2d 483, 7 A.L.R.2d 719; Weil v. Commissioner,

2 Cir., 1948, 173 F.2d 805, certiorari denied 1949, 338 U.S. 821, 70 S.Ct. 65, 94 L.Ed. 498; 2 Mertens Law of Federal Taxation, § 10.01.

The payments received by the defendant were income to her. The amount of her taxes for the years 1944, 1945 and 1946 must be recomputed under Section 126. For these amounts, plus interest, the government is entitled to judgment.

Payments from the partnership of Fairfield & Ellis made through the dormant partner, Good, constitute income to Mrs. Ellis. The question is not what character the so-called "capital asset" assumes in the hands of decedent's beneficiary. Estate of Remington, 9 T.C. 105; Helvering v. Enright's Estate, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093; Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Latendresse v. Commissioner, 26 T.C. 318, affirmed 7 Cir., 1957, 243 F.2d 577; Hall v. Commissioner, 1952, 19 T.C. 445. The payments are not payments on account of the sale of a capital asset, since there was no capital asset of which to dispose. The amount the decedent had invested by way of loan had been returned to him. The enterprise required no capital.

### Conclusions of Law

1. The court has jurisdiction of the subject matter and of the parties hereto.

2. This suit is authorized.

3. The defendant is entitled only to the deduction provided by Section 126(c) (1) of the 1939 Code, as amended October 21, 1942.

4. The plaintiff is entitled to judgment for an amount based upon a recomputation under Section 126.

If the parties hereto cannot agree upon the necessary computation, either party may request this court for an additional hearing for this purpose.

Settle judgment before this court on notice after determination of computation applicable hereunder.